IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2010 MAR -4  P 4: 09

JACQUELINE WEATHERLY,           )
CYNTHIA WILLIAMS, and LYDIA     )
BURKHALTER,                     )
                                )
        Plaintiffs              )
                                )
v.                              ) CASE NO.: 2:10-cv-192-WHA-TPM
                                )
ALABAMA STATE UNIVERSITY,       ) DEMAND FOR JURY TRIAL
                                )
        Defendant.              )

## COMPLAINT

### PRELIMINARY STATEMENT

1.      Plaintiffs, current and former employees of Alabama State University, seek

declaratory and injunctive relief, compensatory damages, backpay, and frontpay from Defendant

arising from Defendants' violation of their rights guaranteed to plaintiffs under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. 2000e, et seq, amended by the Civil Rights Act of 1991.

### JURISDICTION AND VENUE

2.      Plaintiffs bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. 2000e, et seq, as amended by the Civil Rights Act of 1991.

3.      Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331 and

1343, and 42 U.S.C. 2000e, et. seq.

4.      This action is brought within the State where the unlawful employment practices were

committed, making venue proper under 42 U.S.C. 2000e-5(f)(3).

5.      Plaintiffs' claims are authorized by 28 U.S.C. § § 2201 and 2202 (declaratory

judgments), and Fed. R. Civ. P. Rule 57.

## PARTIES

6.     Plaintiff Jacqueline Weatherly is an African-American, female citizen of the United States and of the State of Alabama.  She is a resident of this Judicial District and Division.

7.     Plaintiff Cynthia Williams is an African-American, female citizen of the United States and of the State of Alabama.  She is a resident of this Judicial District and Division.

8.     Plaintiff Lydia Burkhalter is a bi-racial Caucasian-African-American, female citizen of the United States and of the State of Alabama.  She is a resident of this Judicial District and Division.

9.     Defendant Alabama State University ("ASU") is an employer within the meaning of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto.

10.     Defendant ASU is doing business within this District and Division.

11.     Plaintiffs were employees of Defendant ASU within the meaning of Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto.

## FACTS

12.     Plaintiff Jacqueline Weatherly (hereinafter "Plaintiff Weatherly" or "Weatherly") has been employed with Defendant ASU since January of 2002.

13.     Plaintiff Weatherly is currently employed in the job position of a Staff Associate.

14.     Plaintiff Cynthia Williams (hereinafter "Plaintiff Williams" or "Williams") was hired by Defendant ASU in or about June 2006 as a contract consultant in the Office of Marketing & Communications.  From June 2006 until December 2007, Williams continued to work as a contract consultant until she was hired as a permanent, probationary employee on or about December 19,

2

2007 into the position of Marketing & Communications Coordinator. Williams received praise for her work performance while she was a contract consultant. Williams began working as her permanent position of Marketing & Communications Coordinator on January 2, 2008.

15.     Plaintiff Lydia Burkhalter (hereinafter "Plaintiff Burkhalter" or "Burkhalter") was hired by Defendant ASU in or about December, 2007, as a temporary employee in the position of Senior Administrative Secretary. Burkhalter received praise for her work performance and received a pay increase. Burkhalter became a permanent employee in June, 2008.

16.     In or about March of 2008, John F. Knight, Jr. ("Knight") was the Special Assistant to the President and Executive Director for Marketing & Communications and the individual over the Office of the Special Assistant to the President. As such, Knight was the ultimate supervisor for all employees in the Office of the Special Assistant to the President. Knight, an African-American male, reported to the President and to the Board of Trustees.

17.     In or about March of 2008, Lavonette Bartley ("Bartley") was employed in the position of Associate Executive Director for Marketing & Communications in the Office of the Special Assistant to the President and Bartley reported directly to Knight. Bartley was second in charge for the Office of the Special Assistant to the President and she was also the direct supervisor for all of the supervisors in the Office of the Special Assistant to the President. Bartley is an African-American female.

18.     In or about March 2008, Plaintiff Williams worked in the Office of the Special Assistant to the President and her daily direct supervisor was Bartley, and she also reported directly to Knight.

19.     In or about March of 2008, Plaintiff Burkhalter worked in the Office of the Special

3

Assistant to the President and her direct supervisor was Knight.  However, Plaintiff Burkhalter reported on a daily basis to Bartley and Plaintiff Williams for her work assignments.

20.     In addition to his job at ASU, Knight is also an elected member of the Alabama House of Representatives.  Knight assigned additional duties of assisting him with his personal and legislative matters to Plaintiffs Burkhalter and Williams.  These additional duties were performed during their working hours and also after working hours by both Burkhalter and Williams.

21.     In or about March of 2008, Plaintiff Weatherly was working in the position of Staff Associate for University Relations in the Office of Special Assistant to the President and her direct supervisor was the Director of University Relations, Janel Bell-Haynes, who reported directly to Bartley.

22.     On or about March 17, 2008, Plaintiff Weatherly was called a "bitch" and "nigga" by Bartley while she was trying to perform her job duties.  Pursuant to instructions from her direct supervisor, Plaintiff Weatherly was assigned the task of making travel arrangements for the Men's Basketball team to travel to Phoenix, Arizona to play in the N.I.T, which included making transportation arrangements, hotel arrangements, typing check requests, obtaining cash advances, sending checks to the hotels for prepayment, etc.  This was an additional assignment outside her normal job duties and responsibilities.  While working on the travel arrangements for the Basketball team, Weatherly received a telephone call from Bartley in which Bartley instructed her to also make all of the travel arrangements for 12 cheerleaders, 29 band members and the band director to also attend the basketball tournament. The travel arrangement task was time consuming and Weatherly was the only person working on the project.  Bartley called Weatherly a second time to question her status of completing the task and to question the manner in which Weatherly was performing the

4

task. Bartley became irate when Weatherly responded to her questions explaining to Bartley that she was the only person working on the project and was working as fast as possible, including not even taking a lunch break in order to try to complete the task. Bartley then yelled at Weatherly and stated, among other things, "listen Bitch" and "so what, I thought that you knew how to multi-task, and I am so sick and tried of this nigga-shit till I just don't know what to do." Weatherly informed Bartley that she did not want to hear such racist and sexist comments and Bartley continued to yell inappropriate comments to her. Bartley also threatened Weatherly stating that she would be contacting Weatherly's direct supervisor to take disciplinary actions against her in the form of a write-up for telling her not to say the racist and sexist comments.

23.     Prior to the March 17, 2008 incident, Plaintiff Weatherly had witnessed and heard Bartley repeatedly make sexually and racially offensive comments in the workplace. These comments included, but were not limited to, calling females "Bitch" or "Bitches", commenting on females body parts in a sexual manner, calling African-American employees and students the term "nigga", and constantly using the terms "nigga" and "nigga-shit". Bartley used racial and sexual epithets on a continuous basis in the workplace. Weatherly, her co-workers and students were subjected to a racially and sexually hostile work environment due to Bartley's conduct. Weatherly found these comments and words offensive and degrading, and these comments interfered with her ability to perform her job duties.

24.     After Plaintiff Weatherly complained to Bartley about the racially and sexually offensive language on March 17, 2008, Bartley retaliated against Weatherly in the terms and conditions of her employment. Bartley instructed Weatherly's direct supervisor to issue a disciplinary write-up to her. Bartley also interfered with the submission of Weatherly's time sheet

for approval for payment, and accused Weatherly of falsifying ASU documents. Even though Bartley was not responsible for approving and turning in Weatherly's time sheets, Bartley ordered Weatherly's direct supervisor bring Weatherly's time sheet to her which was due to Human Resources ("H.R.") on March 19, 2008. Weatherly had followed ASU procedure for completing and submitting her time sheet, regarding the use of sick leave. Bartley refused to turn in Weatherly's time sheet and attempted to force Plaintiff Weatherly and her supervisor to change the type of leave time on the time sheet from sick leave to annual leave. Prior to taking the sick leave, Weatherly had obtained approval, pursuant to ASU policy, for the sick leave for the last nine (9) days of February 2008. Weatherly refused to change the leave request type since she was out on official sick leave in February 2008, and notified the Human Resources Department that her signature was only on a time sheet that contained sick leave. On or about March 24, 2008 Weatherly's time sheet was finally turned into H.R. and Bartley had a disclaimer written on the time sheet stating that the time could not be verified as accurate. This disclaimer indicated that Weatherly was attempting to falsify documents to ASU.

25.    Whenever Plaintiff Weatherly had complained to Bartley in the past about her offensive conduct and comments, Bartley had retaliated against Weatherly by not turning in her time sheet, delaying the approval of requisition forms, or by changing her work assignments and other terms of employment.

26.    As a result of Bartley's actions described above, Plaintiff Weatherly filed an internal complaint of discrimination, harassment and hostile work environment against Bartley, pursuant to ASU policy, with the Human Resources Department on or about March 20, 2008.

27.    Pursuant to policy, ASU was forced to conduct an internal investigation of Plaintiff

6

Weatherly's complaint of discrimination, harassment and hostile work environment against Bartley.

28.     In or about March 2008, Knight called Plaintiffs Williams and Burkhalter into his office and praised them for their job performance and he also thanked them for their hard work.

29.     In or about March 2008, Plaintiffs Williams and Burkhalter were also praised for their work performance and professionalism by Bartley, and she gave each of them a bottle of wine.

30.     On or about April 11, 2008, Plaintiff Weatherly sent an official written notification to Knight of her internal complaint against Bartley, since Knight was over the entire Office and was Bartley's direct supervisor.  Since Weatherly had previously orally informed Knight of her internal complaint, Knight was already aware of her complaint against Bartley when he received the written correspondence from Weatherly.

31.     As a result of her March 20, 2008, complaint, Plaintiff Weatherly requested that H.R. transfer her to another Department in order to be removed from Bartley and the hostile working environment.  Weatherly's transfer requests were continuously denied.

32.     Plaintiff Weatherly sent several written requests to Beverly Rudolph, Director of H.R., requesting a transfer from the hostile working environment and Bartley's supervision. Weatherly's requests for a transfer were continuously denied.

33.     On or about May 29, 2008, Plaintiff Weatherly provided ASU with a letter from her primary physician regarding the stress and anxiety that she was suffering due to her workplace environment.

34.     On or about May 29, 2008, Plaintiff Weatherly's primary physician referred her for counseling and treatment due to the stress and anxiety she was suffering due to her workplace environment.

7

35.     As a result of having her requests for a transfer denied by H.R., Plaintiff Weatherly met with President Lee to discuss the denial of her requests for a transfer.  President Lee was about to leave his employment with ASU.  President Lee informed Weatherly that he would have her transferred to another department before he left employment.

36.     On or about May 30, 2008, Plaintiff Weatherly received a letter from H.R. Director Rudoph informing her that she was being "temporarily" transferred to the Division of Administrative Services/Police and Campus Security as Staff Associate effective June 2, 2008, under the supervision of Chief Jeffrey Young.  This letter also informed Weatherly that "this transfer is temporary pending the outcome of the EEOC investigation as requested by you alleging harassment/hostile work environment."

37.     In or about May 2008, Knight assumed the role of Acting President.  As a result of Knight's new role, the workload for Plaintiffs Williams and Burkhalter drastically increased and their direct communications with the University Trustees also increased.

38.     Beginning in June 2008, ASU's in-house EEO Committee began its investigation of Plaintiff Weatherly's internal complaint.

39.     On or about July 8 - 11, 2008, the in-house EEO Committee held a hearing as part of the investigation, during which Bartley admitted using the epithets "bitch" and "nigger" in the work place.  Several additional witnesses testified about these sexually and racially offensive comments made by Bartley and the hostile environment created by the same.

40.     Plaintiffs Williams and Burkhalter testified at the hearing held by the in-house EEO Committee, and gave favorable testimony for Bartley since they had not actually witnessed the events that were the basis of Weatherly's complaint.  Burkhalter and Williams had been listed by

Bartley as some of her witnesses for the hearing and Bartley had contacted them about testifying on her behalf.  At the time of the hearing, Bartley had not made any sexually or racially offensive comments in the presence of Burkhalter or Williams.

      41.     In or about July 2008, Dr. William Harris became the Interim President of ASU.

      42.     In or about July 2008, Knight's job title was changed from Acting President to Executive Vice President and Chief Operating Officer, but Knight still functioned as President and performed duties of the role of President.

      43.     During the in-house EEO Committee's investigation of her complaint, Plaintiff Weatherly worked in the Division of Administrative Services/Police and Campus Security as Staff Associate and was not subjected to a hostile working environment.  Chief Young complimented Weatherly on her work skills, abilities and her job performance.

      44.     On or about August 15, 2008, Plaintiff Weatherly filed her first charge of race, gender and hostile environment discrimination against defendant ASU with the Equal Employment Opportunity Commission ("EEOC").  This charge was assigned charge number 420-2008-03294.  This charge complained about the sexually and racially hostile environment created in her work place by Bartley, and about ASU's failure to take proper actions to correct the same.

      45.     At the time of filing her first EEOC charge (420-2008-0394), Plaintiff Weatherly had not received a response from ASU to her internal complaint.

      46.     On or about August 22, 2008, Chief Young made a written request to ASU that Plaintiff Weatherly be permanently transferred to his department due to her job performance.  Weatherly also agreed to this request for a permanent transfer to the Division of Administrative Services/Police and Campus Security as Staff Associate.

47.     On August 25, 2008, ASU's EEO Committee provided a written Report of Findings and Recommendations from its investigation of Plaintiff Weatherly's complaint to the H.R. Department.

48.     On August 28, 2008, ASU's EEO Committee provided a written Memorandum to Interim President Harris with its findings and recommendations from the investigation of Plaintiff Weatherly's complaint.  This Memorandum also had a copy of the August 25, 2008, Report of Findings and Recommendations attached to it.  In this recommendation, the EEO Committee found that Bartley had created a hostile environment and recommended that she receive a written reprimand from her supervisor and that she attend mandatory training.  The EEO Committee also recommended that Plaintiff Weatherly and her position as Staff Associate be transferred to another department within ASU's main campus.

49.     Without any prior discussions, in or about August 2008, Bartley gave Plaintiff Burkhalter several clothing outfits for her to wear to work.  These outfits were all short, tight fitting and/or sexually revealing.

50.     After they provided their testimony in the hearing with the in-house EEO Committee, Plaintiffs Williams and Burkhalter began to hear Bartley make sexually and racially offensive comments in the workplace.  Williams and Burkhalter also witnessed conduct by Bartley which was of a sexually inappropriate nature.

51.     While working at ASU, Plaintiff Weatherly, Plaintiff Williams and Plaintiff Burkhalter have been subjected to racially and sexually offensive comments made by Bartley to them and other employees.  These racially and sexually offensive comments made by Bartley included, but are not limited to, the following:

10

A.    "Nigga-shit" when referring to employee's work performance;

B.    Calling employees and students "nigga";

C.    Referring to an employee as "the biggest fool and stupid ass nigger on the earth";

D.    Telling an employee "don't be a stupid bitch";

E.    Using the phrases "nigga" and "nigga shit" on a daily basis;

F.    Informing an employee "you are attracting niggas and flies at the front desk";

G.    Informing a student in front of employees that "you are always going to be a nigga because you do shit like niggas";

H.    Referring to female employees as "bitch", "bitches", and "stupid bitches";

I.    Stating "Those niggers just don't listen" when complaining about employees' work performance;

J.    Stating "Ya'll niggers gon' learn I ain't nothing to play with.  When I need ya'll bitches you better be here" when complaining about employees' work performance;

K.    Referring to ASU Department of Transportation as "The Nigger Bus Line";

L.    Informing a student in front of employees that he was "Just like the rest of the niggers around here, you aint nothing and never gonna be nothing"; and,

M.    Constantly putting her hand directly in an employees face with her palm facing the employee and stating  "stop talking" then turning her hand so the back of her hand faced the employee and stating "nigger, just talk to the nigger side."

52.    Plaintiffs Weatherly, Williams, and Burkhalter complained to Bartley, Knight, management employees, and some of the Trustees of ASU about these racially and sexually offensive and hostile comments by Bartley, but no actions were taken by ASU to stop and/or correct

11

the same.

53.     From approximately August 2008 to October 2008, Bartley began to make sexually inappropriate and suggestive comments to Plaintiff Burkhalter and other employees about Burkhalter's body. Bartley also made sexually inappropriate and suggestive comments about other females. These comments and actions included, but are not limited to, Bartley calling Burkhalter's buttocks a "big ham" and also referring to other women's buttocks as "big hams", calling Burkhalter's breasts "melons", discussing Burkhalter's thong panties, calling Burkhalter a "bitch", calling Burkhalter a "white bitch" since her skin tone was lighter than the other employees, giving Burkhalter clothing that was sexually revealing and telling her to wear it to work, calling Burkhalter into her office and staring at her breast whenever she wore a top that had an open neck, rubbing against Burkhalter's buttocks with her body, rubbing her breasts against Burkhalter, moving the copy machine directly outside her office so she could stare at the buttocks of Burkhalter and other female employees as they bend over to replace the paper in the copier, and staring at Burkhalter's breasts and other women's breast and making comments about the same. These comments and actions were continuous in nature and offended Burkhalter.

54.     Bartley told Plaintiff Williams that Bartley needed to make Burkhalter strip and show all the places on her body on which Burkhalter had a tattoo.

55.     Bartley would also make comments about Plaintiff Williams' legs and the legs of other females who came into the office. These comments were of a sexual nature and made Williams and Burkhalter uncomfortable, and they were offended by the same.

56.     In or about August 2008, Plaintiff Williams received complaints from female students about inappropriate touching of their bodies and inappropriate comments being made to them about

their body parts by Bartley. The students informed Williams that they found this conduct by Bartley as offensive, and that they felt violated.

57.    When a reporter called the office to ask Knight his position on the Sex Toy Bill that was being debated in the Alabama House of Representatives, Bartley made sexually inappropriate comments about sex toys and a female's sexual satisfaction to Plaintiffs Williams and Burkhalter. These comments involved women knowing how to sexually please other women better than men since they knew the female body better. Williams and Burkhalter found these comments offensive.

58.    During the Fall of 2008, Plaintiffs Burkhalter and Williams began to hear rumors around the ASU campus accusing Burkhalter of being one of Knight's girlfriends. Williams and Burkhalter disputed these rumors and tried to stop the same.

59.    On September 2, 2008, the EEO Committee's Memorandum to Interim President Harris on the investigation of Plaintiff Weatherly's complaint was received in the Office of Special Assistant to the President, which was Knight's department.

60.    On September 8, 2008, Interim President Harris executed the President's decision on the EEO Committee's Report and Recommendation on Weatherly's complaint and he approved the Committee's Recommendations.

61.    On or about September 29, 2008, Chief Young informed Plaintiff Weatherly he had been informed by ASU that his request to have her permanently transferred to the Division of Administrative Services/Police and Campus Security as Staff Associate would not be acted upon until the "Federal EEOC investigation sends down its recommendation (if any)."

62.    On or about September 29, 2008, Plaintiff Weatherly sent a written request to the Interim V.P. for Administrative Services, Kippy Tate, requesting assistance in Chief Young's request

to have her permanently transferred to the Department of Public Safety, and also requesting assistance in receiving the results of the EEO Committee's investigation. Weatherly further questioned why there had to be a decision from the EEOC in Birmingham on her Charge of Discrimination before ASU would make final decisions on her transfer status and internal complaint.

63.   On September 30, 2008, Plaintiff Weatherly sent an email to H.R. Director Rudolph requesting that she be informed whether the EEO Committee's recommendation had been approved. Weatherly also asked what she needed to do in order to be informed of the EEO Committee's ruling.

64.   On or about October 1, 2008, Plaintiff Weatherly was informed in a memorandum from the Interim V.P. for Administrative Services, Kippy Tate, that the investigation of her internal EEO complaint had not been concluded in its entirety and the Committee's decision/recommendation was awaiting approval by new President Harris. This memorandum also informed Weatherly that her  request for a permanent transfer was outside of his jurisdiction

65.   In or about October 2008, Plaintiff Williams heard Knight inform Bartley that he was going to let her make the decision on whether to transfer Plaintiff Weatherly back to the Office of Special Assistant to the President since the internal EEO investigation was concluded. Knight informed Bartley that she should not want Weatherly in the Office since Weatherly had an EEOC Charge pending against her. Bartley informed Knight that she was going to bring Weatherly back to their Office, and Bartley stated that Weatherly would not be there very long once she was transferred back to their Office.

66.   In or about October 2008, Plaintiff Burkhalter complained to Plaintiff Williams about Bartley's sexually and racially offensive conduct since Williams was one of her supervisors. Williams informed Burkhalter that she should report her complaint to Knight and to H.R and to also

14

document her complaints and issues with Bartley.

67.     Plaintiff Burkhalter began making notes on her computer to document her concerns with Bartley's sexually and racially offensive and discriminatory conduct.

68.     In or about October 2008, Plaintiff Williams met with H.R. Director Rudolph and attempted to file an EEO complaint against Bartley for her sexually and racially harassing conduct. Williams was not allowed to file her complaint. Rudolph informed Williams that because there was already a pending charge against Bartley by Weatherly, H.R. could not take her complaint.

69.     When Plaintiff Williams returned to their office from her meeting with H.R. Director Rudolph, Bartley questioned her as to why she had met with Rudolph, and Williams informed Bartley that it was a private matter. Bartley instructed Williams that she was not to talk to anyone, including H.R., about anything regarding her office, and that Rudolph was living on borrowed time as H.R. Director and would be fired as soon as Bartley found someone to replace her. Bartley then instructed Plaintiffs Burkhalter and Williams that they were not to talk to anyone, the EEOC, or each other regarding her office. As Bartley turned and headed back to her office , she chanted "Nowhere to run. Nowhere to hide."

70.     In or about October 2008, Plaintiff Williams complained about Bartley's inappropriate conduct to Trustee Wiggins and Trustee Dean and requested a transfer. Williams also informed the Trustees that H.R. would not allow her to file another EEO complaint on Bartley.

71.     In or about October 2008, Plaintiff Williams was contacted at work by the EEOC Investigator, Glenda Brooks, assigned to investigate Plaintiff Weatherly's Charge of Discrimination. Williams had a telephone conversation with Ms. Brooks on her ASU telephone. In this conversation, Williams informed Brooks that she had recently witnessed sexually and racially discriminatory and

15

harassing conduct by Bartley and that if she had to testify on that day instead of July, her testimony would have been different in the in-house hearing. Williams also informed Ms. Brooks that the H.R. Department was not accepting any additional EEO complaints on Bartley due to Weatherly's pending complaint.

72.     On or about October 27, 2008, Plaintiff Burkhalter left Knight a voice mail message informing him that she needed to talk to him about the issues with Bartley. Burkhalter received no response from Knight.

73.     On or about October 27, 2008, Plaintiff Burkhalter left Knight a second voice mail message regarding the issues with Bartley. Burkhalter received no response from Knight.

74.     On or about October 28, 2008, Plaintiff Burkhalter sent a text message to Knight's cell phone stating that she needed to speak with him on that day about the issues with Bartley. Knight responded to the text message by calling Burkhalter from the State House and they discussed Burkhalter's complaints about Bartley's sexually and racially inappropriate conduct and comments.

75.     On or about October 28, 2008, Knight held a meeting with Plaintiff Williams, Bartley and Dr. Bernadette Chapple to discuss Plaintiff Burkhalter's complaints about Bartley and other issues with Bartley. During this meeting, Knight stated that Burkhalter had informed him of wanting to file an EEO charge against Bartley for racial and sexual discrimination, harassment, and hostile environment. Knight asked Williams if she was aware of Burkhalter's complaints and Williams informed him that she knew of the complaints and had advised Burkhalter to go to H.R., but that Burkhalter said she would first talk to Knight. Knight informed Williams of specific complaints against Bartley being made by Burkhalter and asked whether these complaints were true. Williams informed Knight that Burkhalter's specific complaints were true. Bartley also admitted that some

of the specific complaints were true. Williams also informed Knight that the comments and conduct of Bartley affected her as well as Burkhalter. During this meeting, Knight informed Williams that he was aware that she had spoken with the EEOC Investigator regarding Weatherly's EEOC Charge and Williams stated that she only told the truth about what she had witnessed. Knight informed Williams that he and Bartley had worked together for a long time and that he and Bartley would say things that were not professionally accepted but that he had "no intention of walking around the office on egg shells for fear of employees filing EEOC complaints or talking to investigators." Knight stated that on the next day Bartley would apologize to Burkhalter, but that nothing was going to change. Knight then admonished Williams for talking to the Trustees and informed Williams that no one, including the President and the Trustees, had anything to say about anything that transpired in his office. Knight also admonished Williams for participating in the EEOC investigation and informed her that as a result of her actions, he would be re-evaluating Williams' position and would be determining who was "one of us" and "who would stay or go". Knight further informed Williams "talk to them again and there will be no need for any consideration before termination."

76.     On or about October 30, 2008, Bartley held an open door meeting with Plaintiff Burkhalter, while Plaintiff Williams and Dr. Chapple witnessed the same, and Bartley apologized to Burkhalter as she had been instructed by Knight.

77.     After the meeting of October 28th with Knight to address Plaintiff Burkhalter's complaints, Bartley retaliated against Plaintiffs Williams and Burkhalter. Bartley admonished Burkhalter and Williams for reporting her behavior and office incidents. Bartley also monitored the telephone calls of Burkhalter and Williams.

78.     Bartley's inappropriate racial and sexual comments and conduct continued until

17

Plaintiff Burkhalter was terminated in May 2009. ASU took no actions to stop and/or correct Bartley's inappropriate and discriminatory conduct.

79.     On November 10, 2008, the H.R. Department stamped as received the Report and Recommendation of the EEO Committee on Weatherly's complaint that was approved by Interim President Harris.

80.     On or about November 19, 2008, Plaintiff Williams filed a letter of complaint with H.R. concerning the previous refusal to accept her EEO complaint against Bartley due to the pending complaint of Weatherly, and Knight's comments to her in the October 28th meeting. This complaint was documented by Williams' November 18, 2008 Memo to Knight regarding EEOC Complaint.

81.     On or about November 20, 2008, Plaintiff Williams was attending a meeting of the Presidential Search Committee. During this meeting, Trustees and ASU executives discussed and questioned ASU's attorney, Natasha Meadows, about Bartley's conduct and why she was allowed to continue the conduct. After the meeting was over, Williams and Natasha Meadows had a conversation in which Meadows informed Williams that "Bartley knows". Williams asked Meadow what she meant and Meadows informed her that Bartley knows everything, including all meetings, emails, phone calls, etcetera.

82.     On or about November 21, 2008, Plaintiff Williams requested that Brian Webb in the computer room come to her desk and asked him about a strange new icon on her computer. Webb confirmed to Williams that he had installed a communications tracking software on her computer and that it was linked to the computer in Knight's office. Webb explained to Plaintiffs Williams and Burkhalter that the software transmitted phone calls to emails and stored them on the system for playback, and also stored phone numbers and voice mails. Webb confirmed that Williams' computer

was the only one in the office onto which he had installed the software.

83.     On November 24, 2008, Plaintiff Weatherly received a copy of the EEO Committee's Report and Recommendations on her internal complaint from H.R. after having to request the same several times.

84.     During the Fall of 2008, Plaintiffs Burkhalter and Williams were working closely with the Board of Trustees so they complained to Trustee Herbert Young and Trustee Marvin Wiggins about Bartley's racially and sexually inappropriate comments and conduct.  ASU took no actions to stop and/or correct Bartley's conduct.

85.     After making complaints to the Trustees about Bartley's sexually inappropriate conduct, Trustee Young informed Plaintiff Burkhalter that Bartley was just mad because Burkhalter would not sleep with her and she could not have her.  Burkhalter found this comment by Trustee Young offensive.

86.     In or about November 2008, Knight informed Plaintiff Burkhalter that he liked his coffee sweet and "the color of her complexion".  Burkhalter found this comment offensive.

87.     On or about December 16, 2008, ASU's attorney, Kenneth Thomas, came to the office to meet with Bartley and Plaintiff Williams could hear everything that was being discussed between the two because Bartley's office door was left open.  Thomas informed Bartley that she could offer Williams severance pay in lieu of proper notice of her termination.  Thomas also reminded Bartley that Williams would not be on staff to testify on her behalf if Weatherly's case against her went to trial.  Bartley informed Thomas that Williams had already given the EEOC information against her and she did not care what happened to her.

88.     On or about December 17, 2008, Plaintiff Williams was notified by letter that her

19

employment with ASU would be terminated, effective January 2, 2009.

89.     On or about December 17, 2008, Plaintiff Burkhalter learned of Plaintiff Williams' termination, she called and texted Trustee Young and Trustee Wiggins to inform them about Williams' termination.

90.     On or about December 17, 2008, Plaintiff Williams received a telephone call on her cell phone from Trustee Wiggins in which he informed her to disregard her termination letter and that Knight would be meeting with her regarding a reassignment. Williams also received a similar call on her cell phone from Trustee Young.

91.     On or about December 18, 2008, Knight called Plaintiff Williams into his office for a meeting. Knight informed Williams that he wanted to remind her that he answers to no one and that she "paid the price" for cooperating with the EEOC. This meeting was quickly over and Knight did not discuss any reassignment with her.

92.     On or about January 2, 2009, Plaintiff Williams' employment with ASU ended, contrary to ASU policy requiring 30 days notice before termination. Williams did not receive her appropriate pay and/or severance after her termination.

93.     In or about January 2009, Plaintiff Burkhalter spoke with Trustee Young concerning the stress created by Bartley's offensive conduct, and Trustee Young offered his assistance in obtaining a transfer to the Admissions Department for her. Trustee Young later informed Burkhalter that Knight would not allow her to be transferred because she was a good employee.

94.     After speaking to Trustee Young in or about January 2009, Plaintiff Burkhalter discovered that someone had gone into the computer on her desk and printed the file containing the notes documenting her concerns with Bartley.

20

95.     On or about January 26, 2009, Knight called Plaintiff Burkhalter into his office, along with Bartley and Dr. Chapple.  Knight informed Burkhalter that she was not allowed to document anything that happened to her within the office and that she was not allowed to speak to any Trustee concerning her complaints about Bartley and issues in his office if she wanted to remain employed at ASU.  Knight informed Burkhalter that she needed to address all concerns with him verbally. Knight tore up and threw away Burkhalter's documentation concerning the incidents against Bartley.

96.     On or about January 26, 2009, Plaintiff Burkhalter informed Trustee Young and Trustee Wiggins of her instructions from Knight prohibiting her from speaking to them about issues and prohibiting her from documenting her concerns.

97.     On or about January 28, 2009, the new Director of Public Safety, Chief Henry C. Davis, Jr., appointed Plaintiff Weatherly the job assignments of Acting Administrative Secretary to the Chief and made her the second in the chain of command for civilian personnel.

98.     In or about January 2009, ASU allowed Bartley to file an untimely appeal of the President's decision affirming the in-house EEO Committee's Findings and Recommendations.

99.     On or about February 13, 2009, Plaintiff Williams filed her Charge of Discrimination with the EEOC alleging that she was subjected to a racially and sexually hostile work environment at ASU, that she was terminated on December 17, 2008, in retaliation for her participation in the internal investigations of the complaints made by Plaintiffs Weatherly and Burkhalter regarding Bartley racially and sexually inappropriate conduct and for participating in the EEOC's investigation of Plaintiff Weatherly's Charge of Discrimination, and that she was denied final pay by ASU in retaliation for her participation in the EEOC investigations.  Williams' Charge was assigned Charge number 420-2009-01188.

21

100.    On or about February 16, 2009, Chief Davis requested that Plaintiff Weatherly be permanently transferred to the Department of Public Safety.

101.    On or about February 18, 2009, President Harris was notified, through Knight, by memorandum from H.R. Director Rudolph that Plaintiff Weatherly was being recommended for a lateral transfer from the Department of Public Safety, Building and Grounds to Institutional Advancement. This position was in a department that was under Knight's chain of command, with Bartley having direct supervisory responsibilities.

102.    On or about February 23, 2009, Knight made the recommendation to President Harris to approve the transfer of Plaintiff Weatherly and President Harris approved said transfer.

103.    On or about February 25, 2009, Director of H.R. Rudolph sent written notification to Plaintiff Weatherly informing her that she was being transferred back to Knight's Department to Institutional Advancement, effective March 2, 2009. Weatherly was being transferred at the same grade level and pay rate with no change in position or benefits.

104.    Since the Directors of Public Safety had requested Plaintiff Weatherly be permanently reassigned to their Department, Plaintiff Weatherly protested this transfer as being retaliation since she would be placed back in a Department directly supervised by Bartley.

105.    On or about March 19, 2009, Plaintiff Weatherly was forced to sign a new employment contract for the transfer to the job position of Staff Associate for Institutional Advancement. Weatherly disputed the transfer as retaliation for her pending EEOC charge and she signed the contract under protest in order to maintain her job.

106.    Upon information and belief, no other employees of ASU have been required to sign a new contract when they were transferred to a new job assignment at the same grade level and pay

22

rate with no change in position or benefits.

107.    President Harris signed the new employment contract for Plaintiff Weatherly on February 3, 2009, which was fifteen (15) days before he received the February 18, 2009 written request from H.R. for Weatherly's transfer.

108.    Defendant ASU took no actions to investigate Plaintiff Weatherly's complaints of retaliation in her transfer back into the department with Bartley, and the denial of permanent assignment in the Department of Public Safety. ASU took no actions to stop this retaliatory conduct.

109.    On or about March 20, 2009, Knight finally wrote the Written Reprimand Memorandum to Bartley in accordance with President Harris's approval of the EEO Committee's Recommendation in Plaintiff Weatherly's complaint. In this Memorandum, Knight stated that the reprimand "does not result from my belief that you have created a hostile work environment within the context of Title VII of the Civil Rights Act of 1964". Bartley did not sign that she had received this Written Reprimand until March 26, 2009.

110.    In or about March 2009, Knight made inappropriate comments to Plaintiff Burkhalter that she perceived to be a sexual advancement. On a Monday morning, Knight and Burkhalter were the only two (2) employees in the office. Knight asked Burkhalter what she had done over the weekend and she informed him that she went out to a party. Knight asked Burkhalter if she had danced and she replied that she had. Knight then stated to Burkhalter "dance for me like you did this weekend." Knight then told Burkhalter "I can take you to parties that you need to go to." Knight's comments made Burkhalter uncomfortable. The telephone began to ring so Burkhalter left Knight's office.

111.    During the Spring of 2009, the rumors of Burkhalter being Knight's girlfriend were

still being made.  Plaintiff Burkhalter was upset about the rumors, but Knight did not appear to be upset when people referred to Burkhalter as his girlfriend.

112.    On or about March 24, 2009, Knight called Burkhalter and informed her that he was sorry that he had missed her birthday and told her that "I will make it up to you."  Knight told Burkhalter "I will give you anything that you want for your birthday, what do you want?"  Knight also asked Burkhalter "what is the wildest thing that you think you could do on your birthday?"  Burkhalter perceived these comments from Knight to be another sexual advancement and they made her uncomfortable.

113.    On or about April 13, 2009, Plaintiff Burkhalter attempted to file an internal complaint with ASU about Bartley's conduct and to request a transfer from Knight's office to another department on campus.  Burkhalter could not complete the complaint since H.R. Director Rudolph had to leave the office for a meeting.

114.    Between April 13 and May 5, 2009, Plaintiff Burkhalter communicated with H.R. Director Rudolph about completing her internal complaint, but she was not able to complete the complaint because Rudolph was not available to meet with her.

115.    April of 2009, Plaintiff Burkhalter spoke with Trustees Young and Wiggins about her request for a transfer and they informed her that nothing could be done by them until her complaint had been completed with H.R.

116.    On or about April 24, 2009, President Harris denied Bartley's appeal of his decision affirming the in-house EEO Committee's Findings and Recommendations on Weatherly's complaint.

117.    On or about May 5, 2009, Plaintiff Burkhalter completed and filed an internal complaint with H.R. regarding Bartley's racial and sexual discriminatory treatment of her and the

hostile environment being created by Bartley, and she requested a transfer to another department.

Burkhalter met with H.R. Director Rudolph and the new Human Resources VP, Carmen Douglas,

to discuss and complete her complaint.

118.    On or about May 8, 2009, Plaintiff Burkhalter wrote an official letter to Knight and

H.R. requesting that ASU transfer her to another department in order to be moved away from Bartley

and the racially and sexually discriminatory work environment, and Bartley's discriminatory and

retaliatory conduct.  This request for a transfer was denied.

119.    After Plaintiff Burkhalter gave Knight her request for a transfer, Knight met with

Burkhalter and H.R. VP Douglas to discuss the request.  In this meeting, Knight stated that he was

not aware of any harassment by Bartley.  Burkhalter asked Knight how he could make that statement

since he held the meeting on October 28th in which Cynthia Williams confirmed Bartley's improper

conduct.  Burkhalter also reminded Knight that in January he had also torn up her documentation of

the incidents with Bartley when he instructed her not to talk to the Trustees about the matter.

120.    On numerous occasions, Plaintiff Burkhalter reported Bartley's racially and sexually

discriminatory conduct to Knight, but he took no actions to stop and/or correct the same.

121.    Contrary to the findings and recommendations of the in-house EEO Committee and

the approval by the President on Plaintiff Weatherly's complaint, Knight still had not enforced the

mandatory training provisions for Bartley at the time Plaintiff Burkhalter filed her internal complaint

on May 5, 2009.  This mandatory training for Bartley had been approved by the President on

September 8, 2008.

122.    On or about May 8, 2009, Plaintiff Weatherly filed her second Charge of

Discrimination with the EEOC against ASU.  This Charge was assigned Charge number 420-2009-

25

02126. Weatherly alleged that she was being retaliated against by ASU for filing her first Charge of Discrimination and protesting discrimination by being transferred back into the Department and work environment with Bartley, being denied the request for permanent employment in the Department of Public Safety, being forced to sign a new employment contract for the lateral transfer, and the improper process involving the transfer.

123.    On or about May 11, 2009, Plaintiff Burkhalter followed the normal procedure of timely providing her time sheet to Bartley for Bartley's signature of approval and for Bartley to submit to H.R. for payment of Burkhalter's salary.

124.    On or about May 14, 2009, Plaintiff Burkhalter was notified by payroll in H.R. that her time sheet had not been submitted by Bartley with the other time sheets for the department. Burkhalter immediately completed a new copy of her time sheet and provided it to management in her department for approval. Bartley and/or the other management in the department did not approve Burkhalter's time sheet in time for her to receive her paycheck. Burkhalter was the only employee in the department who did not receive their paycheck for that period, and she was the only employee who had recently filed an internal complaint against Bartley.

125.    On or about May 15, 2009, Plaintiff Burkhalter filed her first Charge of Discrimination with the EEOC against ASU. This Charge was assigned Charge number 420-2009-02208. Burkhalter alleged that she was being subjected to sexual and racial harassment, hostile environment and discrimination in the terms and conditions of her employment by Bartley and further that Knight was allowing Bartley's conduct to happen. Burkhalter also alleged that she was being retaliated against for complaining about the harassment and discrimination, and that the retaliation included being scolded, having her request to transfer to another department denied, and

26

by not receiving a paycheck because her time sheet had not been submitted to H.R.

126.    On or about May 18, 2009, Plaintiff Burkhalter was forced to be off from work due to illness from stress caused by her hostile work environment, and she used a sick leave day.

127.    On or about May 19, 2009, Plaintiff Burkhalter had an appointment with her physician and the physician put her on medical leave from May 18 to May 26, 2009. Burkhalter had her physician fax copies of the medical excuse to Knight and to H.R. VP Douglas. Burkhalter's physician also made a written requested that she be transferred out of her work environment since the stress was causing her blood pressure to be too high.

128.    After her doctor's appointment, Plaintiff Burkhalter sent an email on ASU's email account to Knight and H.R. VP Douglas informing them about need for medical leave.

129.    On or about Friday, May 22, 2009, Burkhalter went to ASU and hand delivered copies of her physician's medical excuse and letter requesting the transfer to H.R. VP Douglas and to Knight. Burkhalter watched Douglas read the letter and Douglas did not make any comments to Burkhalter regarding her employment status or that there was a problem with her medical leave. Burkhalter also hand delivered copies of her medical excuse and physician's letter to Knight's office, but he was not in when she left the same.

130.    On or about Tuesday, May 26, 2009, Plaintiff Burkhalter returned to work from her medical leave per her physician's instructions. At approximately 8:15 a.m., Burkhalter was called into a meeting by Dr. Chapple in H.R. VP Douglas' office. Douglas informed Burkhalter that a letter had been mailed to her on Friday, May 22, 2009, informing her that her employment had been terminated for job abandonment, and that she needed to leave ASU's premises. Burkhalter informed Douglas that she had not received the letter and then asked Douglas why she had not informed her

about the letter on Friday when Burkhalter met with her to provide copies of her physician's letters. Douglas informed Burkhalter that she had not written the letter. Burkhalter left ASU and went home.

131.    Around 4:30 p.m. on May 26, 2009, Plaintiff Burkhalter received the letter from Knight informing her that she was terminated for alleged job abandonment for failing to communicate with her supervisor for three (3) consecutive days since her last communication had occurred on May 19th. This letter from Knight was dated May 22, 2009. This letter was not copied to the President of ASU.

132.    On or about May 22, 2009, Plaintiff Burkhalter was terminated in retaliation for filing her internal complaints of harassment and discrimination and for filing her Charge of Discrimination with the EEOC.

133.    On or about May 27, 2009, Plaintiff Burkhalter filed her second Charge of Discrimination with the EEOC against ASU. This Charge was assigned Charge number 420-2009-02298. In this Charge, Burkhalter alleged that she was terminated in retaliation for filing her internal complaint of discrimination and harassment and for filing her first Charge of Discrimination with the EEOC (420-2009-02208). Burkhalter also alleged that she was being discriminated against because of her race and in retaliation for opposing discrimination.

134.    On or about May 29, 2009, Plaintiff Burkhalter, pursuant to ASU policy, hand delivered a written grievance contesting her termination. In this grievance, Burkhalter contested that she abandoned her job, and she also contested the manner in which she was terminated since her termination letter did not comply with ASU policy 6.2, which states that only the President has authority to actually terminate an employee and the notice must be in writing with a copy provided

to the employee. Burkhalter further stated that she was being terminated in retaliation for filing her EEOC Charge. Burkhalter hand delivered copies of her written grievance to President Harris, H.R. VP Douglas, and Knight. Burkhalter also delivered a copy of her grievance to ASU's Attorney, Kenneth Thomas.

135.    Plaintiff Burkhalter never received any response from ASU to her May 29, 2009 grievance as outlined by ASU policy.

136.    On or about June 1, 2009, Plaintiff Weatherly was written up in retaliation for her EEOC complaints. Weatherly received a written reprimand from her new supervisor, Danielle Kennedy-Lamar for failure to attend an introductory staff meeting. This staff meeting was not a mandatory meeting. Weatherly was working on a priority assignment which had been given to her by her immediate supervisor. Since Weatherly's attendance was not required at the staff meeting, her failure to attend the meeting did not warrant a written reprimand. Kennedy-Lamar gave Weatherly the written reprimand on her first day as the new Supervisor. Kennedy-Lamar is close friends with Bartley and she had testified on Bartley's behalf in the in-house hearing on Weatherly's internal complaint.

137.    On or about June 1, 2009, Plaintiff Weatherly fell over torn carpeting in Councill Hall Room 301 and injured her spine. Plaintiff Weatherly had previously made several written and verbal reports to ASU about the unsafe condition of the carpet and requested that it be repaired and/or replaced. Weatherly's reports and requests for repairs were ignored by ASU in retaliation for her EEOC complaints. As a result of these repairs not being made to the carpet, Weatherly fell and was injured.

138.    On or about June 18, 2009, H.R. VP Douglas sent Plaintiff Burkhalter a letter

29

informing her that ASU's records indicated that her status of separation was voluntary termination. The letter acknowledged receipt by Douglas of the faxed doctor's excuse, but stated that this fax did not comply with the sick leave policy so she had abandoned her job by failing to communicate with her supervisor for three (3) consecutive days.

139.    According to the Non-Academic Staff Handbook; Section 3.5 Sick Leave, "Failure to communicate with the supervisor for three consecutive days of absence may be considered as job abandonment." The policy does not require an automatic termination of the employee.

140.    After her termination from ASU, Trustee Young informed Plaintiff Burkhalter that "if you had just laid on your back for Knight, you wouldn't be in this situation" when discussing her termination. Trustee Young also informed Plaintiff Williams that he had told Burkhalter that she should have slept with Knight to keep her job. Burkhalter and Williams found these comments by Young offensive.

141.    Plaintiffs Burkhalter and Williams were not provided with any training on the sexual harassment policy during their employment with ASU.

142.    On or about June 22, 2009, Plaintiff Weatherly filed her third Charge of Discrimination with the EEOC. This Charge was assigned Charge number 420-2009-02572. In this Charge, Weatherly alleged that she was retaliated against for filing her two previous EEOC charges by being given a written reprimand for failing to attend a non-mandatory, introductory staff meeting by her new Supervisor, despite the fact that she was working on a priority assignment from her immediate supervisor. Weatherly also alleged that it was ASU's intent to  closely scrutinized her and continue to subject her to disciplinary action until she was terminated. The retaliation against Weatherly is on going and of a continuous nature.

143.    From June 1 through June 26, 2009, Plaintiff Weatherly was out on medical leave due to the on the job injury she sustained to her spine from falling on the unsafe carpet.  Weatherly was forced to take FMLA leave for this on the job injury even though there was no approved ASU policy requiring the use of FMLA leave for on the job injuries.  Other employees who had been injured on the job and who have not filed charges protesting discrimination were not required to use FMLA leave.

144.    Plaintiff Weatherly has been treated differently in the terms and conditions of her employment on the payment for her wages lost as a result of being injured on the job.  Plaintiff was not paid for all of her lost wages and associated expenses and she was forced to file claims for the same with the Board of Adjustments.  Other employees who have not opposed discrimination have been awarded their full salary and associated expenses without having to file claims through the Board of Adjustment.  Weatherly continues to be retaliated against in the terms and conditions of her employment due to filing her EEOC Charges.

145.    In their actions toward plaintiffs as described above, Defendant acted willfully, intentionally and with callous and reckless indifference to Plaintiffs' federally protected rights under Title VII.

146.    As a result of Defendant's denial of the transfers, terminations, and other acts against Plaintiffs in retaliation for their exercise of their rights to complain about discrimination, and due to their race and gender, Plaintiffs have suffered loss of income, loss of job benefits, severe humiliation, mental distress and emotional suffering.

## COUNT ONE

## RACIAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

147. The Plaintiffs reallege and incorporate by reference paragraphs 1 - 146 above as though recopied and rested herein in full.

148. Plaintiffs have been and continue to be discriminated against by Defendant in the terms, conditions and privileges of their employment through the creation and toleration of a racially charged and hostile work environment.

149. The Plaintiffs have been subject to a racially hostile work environment which has been authorized, ratified, encouraged and condoned by ASU.

150. This racially hostile environment includes, but is not limited to, racial slurs, racial jokes, racial harassment, racial stereotypes, and other disparate treatment by which African-American persons are treated as inferior, as set out in detail above.

151. The racially hostile environment changed, and continues to change, the terms and conditions of the employment of the Plaintiffs.

152. Supervisors and/or management officials at ASU participated in, were aware of, encouraged, and/or condoned the racially hostile work environment.

153. ASU failed to train its employees, including the Plaintiffs on its purported anti-discrimination and harassment policy and reporting procedures.

154. The dissemination of any anti-discrimination policy and reporting procedures after the Plaintiffs filed their EEOC Charges of Discrimination against the Defendant have been ineffective, as the same racially hostile and discriminatory practices continue to occur and supervisory and/or management employees continue to participate in, are aware of, encourage, and/or condone the racially hostile work environment.

155. The Plaintiffs have been directly affected by the racially discriminatory and harassing

32

practices described in this Complaint.

156. The Plaintiffs made good faith complaints in opposition to the racial discrimination and racial harassment to which they, and other African-American employees, were subjected.

157. As set out in detail above, in retaliation for the Plaintiffs' good faith opposition to racial harassment and racial discrimination, the Defendant has retaliated against the Plaintiffs and other African-American employees who have protested and/or complained about the racially harassing and discriminatory treatment.

158. The Defendant's conduct was retaliation based, at least in part, on the Plaintiffs' protected activities of opposing racial discrimination and harassment.

159. The unlawful actions of the Defendant, as set forth above, constitute a practice, pattern, custom or policy of the Defendant for allowing acts of racial harassment, racial discrimination and/or retaliation in violation of its employees' federally protected rights.

160. The conduct of the Defendant was so severe or pervasive as to create a racially hostile working environment for the Plaintiffs.

161. The Defendant knew, or should have known, of the racial harassment, racial discrimination, and retaliation of the Plaintiffs.

162 The Defendant failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the racial harassment, racial discrimination and/or retaliation of the Plaintiffs.

163. The actions of Defendant, as set out herein, violate Title VII.

164. As a result of the actions of the Defendant, the Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and

suffering and monetary and economic losses.

165.    Plaintiffs have satisfied all administrative prerequisites to bringing this claim:

A.    Plaintiff Weatherly timely filed her three (3) Charges of Discrimination with the Equal Employment Opportunity Commission against Defendant on August 15, 2008, May 8, 2009, and June 22, 2009, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

B.    Plaintiff Williams timely filed her Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission on February 13, 2009, which was filed within 180 days of the commission of the unlawful employment practices alleged herein

C.    Plaintiff Burkhalter timely filed her two (2) Charges of Discrimination against Defendant with the Equal Employment Opportunity Commission on May 15, 2009 and May 27, 2009, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

D.    On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Weatherly Notices of Right to Sue on her three (3) EEOC Charges. Plaintiff Weatherly received said three (3) Notices on December 31, 2009.

E.    On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Williams a Notice of Right to Sue on her EEOC Charge.  Plaintiff Williams received said Notice on or about December 31, 2009.

F.    On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Burkhalter a Notice of Right to Sue on EEOC Charge number 420-2009-02208.  Plaintiff Burkhalter received said Notice on December 31, 2009.  On or about January 7,

34

2010, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Burkhalter a Notice of Right to Sue on EEOC Charge number 420-2009-02298. Plaintiff Burkhalter received said Notice on January 11, 2010.

G.      This complaint has been filed within 90 days of Plaintiffs' receipt of the notifications of Right to Sue letters on their EEOC Charges from the U.S. Department of Justice, Civil Rights Division.

## COUNT TWO

### SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

166.    The Plaintiffs reallege and incorporate by reference paragraphs 1 - 165 above as though recopied and restated herein in full.

167.    In taking the above-described actions, Defendant ASU intentionally discriminated against Plaintiffs on the basis of their gender, in violation of Title VII. Specifically, Defendant condones and tolerates sexual harassment. Defendant's actions created, nurtured, tolerated, condoned, or otherwise permitted a sexually hostile environment in violation of Title VII.

168.    The actions of Defendant ASU, through its agent, Young, Knight, and Bartley, were taken with malice or reckless indifference to the federally-protected rights of Plaintiffs.

169.    Plaintiffs have been and continue to be discriminated against by Defendant in the terms, conditions and privileges of their employment through the creation and toleration of a sexually charged and hostile work environment.

170.    The Plaintiffs have been subject to a sexually hostile work environment which has been authorized, ratified, encouraged and condoned by ASU.

171.    This sexually hostile environment includes, but is not limited to, gender slurs, sexual

comments, sexual harassment, gender stereotypes, inappropriate touching and other disparate treatment by which women are treated as inferior, as set out in detail above.

172.    The sexually hostile environment changed, and continues to change, the terms and conditions of the employment of the Plaintiffs.

173.    Supervisors and/or management officials at ASU participated in, were aware of, encouraged, and/or condoned the sexually hostile work environment.

174.    ASU failed to train its employees, including the Plaintiffs on its purported anti-discrimination and harassment policy and reporting procedures.

175.    The dissemination of any anti-discrimination policy and reporting procedures after the Plaintiffs filed their EEOC Charges of Discrimination against the Defendant have been ineffective, as the same sexually hostile and discriminatory practices continue to occur and supervisory and/or management employees continue to participate in, are aware of, encourage, and/or condone the sexually hostile work environment.

176.    The Plaintiffs have been directly affected by the sexually discriminatory and harassing practices described in this Complaint.

177.    The Plaintiffs made good faith complaints in opposition to the sexual discrimination and sexual harassment to which they, and other female employees, were subjected.

178.    As set out in detail above, in retaliation for the Plaintiffs' good faith opposition to sexual harassment and sexual discrimination, the Defendant has retaliated against the Plaintiffs and other female employees who have protested and/or complained about the sexually harassing and discriminatory treatment.

179.    The Defendant's conduct was retaliation based, at least in part, on the Plaintiffs'

protected activities of opposing sexual discrimination and harassment.

180.    The unlawful actions of the Defendant, as set forth above, constitute a practice, pattern, custom or policy of the Defendant for allowing acts of sexual harassment, sexual discrimination and/or retaliation in violation of its employees' federally protected rights.

181.    The conduct of the Defendant was so severe or pervasive as to create a sexually hostile working environment for the Plaintiffs.

182.    The Defendant knew, or should have known, of the sexual harassment, sexual discrimination, and retaliation of the Plaintiffs.

183    The Defendant failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the sexual harassment, sexual discrimination and/or retaliation of the Plaintiffs.

184.    The actions of Defendant, as set out herein, violate Title VII.

185.    As a result of the actions of Defendant ASU in violation of Title VII, the Plaintiffs have been and continue to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering and monetary and economic losses.

186.    Plaintiffs have satisfied all administrative prerequisites to bringing this claim:

A.      Plaintiff Weatherly timely filed her three (3) Charges of Discrimination with the Equal Employment Opportunity Commission against Defendant on August 15, 2008, May 8, 2009, and June 22, 2009, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

B.      Plaintiff Williams timely filed her Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission on February 13, 2009, which was filed within 180

days of the commission of the unlawful employment practices alleged herein

C.      Plaintiff Burkhalter timely filed her two (2) Charges of Discrimination against Defendant with the Equal Employment Opportunity Commission on May 15, 2009 and May 27, 2009, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

D.      On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Weatherly Notices of Right to Sue on her three (3) EEOC Charges. Plaintiff Weatherly received said three (3) Notices on December 31, 2009.

E.      On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Williams a Notice of Right to Sue on her EEOC Charge.  Plaintiff Williams received said Notice on or about December 31, 2009.

F.      On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Burkhalter a Notice of Right to Sue on EEOC Charge number 420-2009-02208.  Plaintiff Burkhalter received said Notice on December 31, 2009.  On or about January 7, 2010, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Burkhalter a Notice of Right to Sue on EEOC Charge number 420-2009-02298.  Plaintiff Burkhalter received said Notice on January 11, 2010.

G.      This complaint has been filed within 90 days of Plaintiffs' receipt of the notifications of Right to Sue letters on their EEOC Charges from the U.S. Department of Justice, Civil Rights Division.

## COUNT THREE

### TITLE VII - JACQUELINE WEATHERLY

187.    Plaintiff Weatherly realleges and incorporates by reference paragraphs 1 - 186 above as though recopied and restated herein in full.

188.    As set out in detail above, Defendant intentionally and maliciously discriminated against Plaintiff Weatherly on the basis of race and gender in violation of Title VII by subjecting her to the racially and sexually hostile work environment, by denying her requests for a permanent transfer to the job position in the Department of Safety, by transferring her back under the Supervision of Knight and Bartley, by failing to follow university policies regarding the terms and conditions of her employment, and by subjecting her to stricter scrutiny than similarly situated employee not in the protected class.  Defendant ASU intentionally violated Plaintiff Weatherly's rights pursuant to Title VII.

189.    All acts of discrimination were done wilfully and with malicious and reckless disregard for the rights of Plaintiff Weatherly.

190.    In taking the above-described actions, Defendant ASU intentionally discriminated against Plaintiff Weatherly on the basis of her gender and race in violation of Title VII.  The actions of Defendant were taken with malice or reckless indifference to the federally protected rights of Plaintiff Weatherly.

191.    As a proximate consequence of Defendant's actions and the violation of Title VII, as set out in detail above, Plaintiff Weatherly has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

192.    Plaintiff Weatherly is suffering and will continue to suffer irreparable injury from the

Defendant's conduct as set forth herein unless enjoined by this Court.

193.    Plaintiff Weatherly has no adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory damages is her only means of securing adequate relief.

194.    As set out in detail above, the Defendants knew, or should have known, of the racial and sexual discrimination and condoned, ratified and otherwise allowed the racially and sexually discriminatory behavior to continue.

195.    Plaintiff Weatherly suffered damages as a proximate result of these violations, which were caused by Defendant's policy or custom to allow and condone racial and sexual discrimination in deliberate indifference to rights of Plaintiff Weatherly.

196.    Plaintiff Weatherly has satisfied all administrative prerequisites to bringing her Title VII  claims:

A.      Plaintiff Weatherly timely filed her three (3) Charges of Discrimination with the Equal Employment Opportunity Commission against Defendant on August 15, 2008, May 8, 2009, and June 22, 2009, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

B.      On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Weatherly Notices of Right to Sue on her three (3) EEOC Charges. Plaintiff Weatherly received said three (3) Notices on December 31, 2009.

C.      This complaint has been filed within 90 days of Plaintiff's receipt of the notifications of Right to Sue letters on her EEOC Charges from the U.S. Department of Justice, Civil Rights Division.

197.    Defendant's conduct violates Title VII.

## COUNT FOUR

## TITLE VII - RETALIATION - JACQUELINE WEATHERLY

198.    Plaintiff Weatherly realleges and incorporates by reference paragraphs 1 - 197 above as though recopied and restated herein in full.

199.    As set out in detail above, Plaintiff Weatherly has been intentionally discriminated against and retaliated against in violation of Title VII by Defendant ASU for protesting racial and sexual discrimination.

200.    In taking the above-described actions, Defendant ASU intentionally discriminated against and retaliated against Plaintiff Weatherly for protesting against racial and sexual discrimination. Employees who have not opposed discrimination have not been treated in a similar manner as Plaintiff Weatherly. The actions of Defendant ASU were taken with malice or reckless indifference to the federally protected rights of Plaintiff.

201.    Plaintiff Weatherly complained about the retaliatory actions and Defendant failed to take corrective actions to prevent the retaliation. Defendant ASU's actions were in violation of Title VII.

202.    As a proximate consequence of Defendant ASU's actions and the violation of Title VII, Plaintiff Weatherly has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

203.    The retaliation against Plaintiff Weatherly is ongoing and of a continuous nature.

204.    Plaintiff Weatherly has satisfied all administrative prerequisites to bringing this claim:

A.    Plaintiff Weatherly timely filed her three (3) Charges of Discrimination with the

41

Equal Employment Opportunity Commission against Defendant on August 15, 2008, May 8, 2009, and June 22, 2009, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

B. On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Weatherly Notices of Right to Sue on her three (3) EEOC Charges. Plaintiff Weatherly received said three (3) Notices on December 31, 2009.

C. This complaint has been filed within 90 days of Plaintiff's receipt of the notifications of Right to Sue letters on her EEOC Charges from the U.S. Department of Justice, Civil Rights Division.

**COUNT FIVE**

**TITLE VII - CYNTHIA WILLIAMS**

205. Plaintiff Williams realleges and incorporates by reference paragraphs 1 - 204 above as though recopied and restated herein in full.

206. As set out in detail above, Defendant intentionally and maliciously discriminated against Plaintiff Williams on the basis of race and gender in violation of Title VII by subjecting her to the racially and sexually hostile work environment, by denying her requests for a transfer another department, by terminating her employment, by failing to follow university policies regarding the terms and conditions of her employment, and by subjecting her to stricter scrutiny than similarly situated  employee not in the protected class.  Defendant ASU intentionally violated Plaintiff William's rights pursuant to Title VII.

207. All acts of discrimination were done wilfully and with malicious and reckless disregard for the rights of Plaintiff Williams.

208.   In taking the above-described actions, Defendant ASU intentionally discriminated against Plaintiff Williams on the basis of her gender and race in violation of Title VII. The actions of Defendant were taken with malice or reckless indifference to the federally protected rights of Plaintiff Williams.

209.   As a proximate consequence of Defendant's actions and the violation of Title VII, as set out in detail above, Plaintiff Williams has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

210.   Plaintiff Williams is suffering and will continue to suffer irreparable injury from the Defendant's conduct as set forth herein unless enjoined by this Court.

211.   Plaintiff Williams has no adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, frontpay, an injunction, and compensatory damages is her only means of securing adequate relief.

212.   As set out in detail above, the Defendants knew, or should have known, of the racial and sexual discrimination and condoned, ratified and otherwise allowed the racially and sexually discriminatory behavior to continue.

213.   Plaintiff Williams suffered damages as a proximate result of these violations, which were caused by Defendant's policy or custom to allow and condone racial and sexual discrimination in deliberate indifference to rights of Plaintiff Williams.

212.   Plaintiff Williams has satisfied all administrative prerequisites to bringing her Title VII claims:

A.   Plaintiff Williams timely filed her Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission on February 13, 2009, which was filed within 180

days of the commission of the unlawful employment practices alleged herein

B.     On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Williams a Notice of Right to Sue on her EEOC Charge. Plaintiff Williams received said Notice on or about December 31, 2009.

C.     This complaint has been filed within 90 days of Plaintiff's receipt of the notification of Right to Sue letter on her EEOC Charge from the U.S. Department of Justice, Civil Rights Division.

213.   Defendant's conduct violates Title VII.

**COUNT SIX**

**TITLE VII - RETALIATION - CYNTHIA WILLIAMS**

214.   Plaintiff Williams realleges and incorporates by reference paragraphs 1 - 213 above as though recopied and restated herein in full.

215.   As set out in detail above, Plaintiff Williams has been intentionally discriminated against and retaliated against in violation of Title VII by Defendant ASU for protesting racial and sexual discrimination.

216.   In taking the above-described actions, Defendant ASU intentionally discriminated against and retaliated against Plaintiff Williams for protesting against racial and sexual discrimination. Employees who have not opposed discrimination have not been treated in a similar manner as Plaintiff Williams. The actions of Defendant ASU were taken with malice or reckless indifference to the federally protected rights of Plaintiff.

217.   Plaintiff Williams complained about the retaliatory actions and Defendant failed to take corrective actions to prevent the retaliation. Defendant ASU's actions were in violation of Title

VII.

218.    As a proximate consequence of Defendant ASU's actions and the violation of Title

VII, Plaintiff Williams has suffered, and will continue to suffer, lost income and benefits, mental

anguish and emotional distress, and other injuries and damages.

219.    The retaliation against Plaintiff Williams was ongoing and of a continuous nature.

220.    Plaintiff Williams has satisfied all administrative prerequisites to bringing this claim:

A.    Plaintiff Williams timely filed her Charge of Discrimination against Defendant with

the Equal Employment Opportunity Commission on February 13, 2009, which was filed within 180

days of the commission of the unlawful employment practices alleged herein

B.    On or about December 28, 2009, the U.S. Department of Justice, Civil Rights

Division issued to Plaintiff Williams a Notice of Right to Sue on her EEOC Charge.  Plaintiff

Williams received said Notice on or about December 31, 2009.

C.    This complaint has been filed within 90 days of Plaintiff's receipt of the notification

of Right to Sue letter on her EEOC Charge from the U.S. Department of Justice, Civil Rights

Division.

## COUNT SEVEN

## TITLE VII - LYDIA BURKHALTER

221.    Plaintiff Burkhalter realleges and incorporates by reference paragraphs 1 - 222 above

as though recopied and restated herein in full.

223.    As set out in detail above, Defendant intentionally and maliciously discriminated

against Plaintiff Burkhalter on the basis of race and gender in violation of Title VII by subjecting her

to the racially and sexually hostile work environment, by denying her requests for a transfer another

department, by terminating her employment, by failing to follow university policies regarding the terms and conditions of her employment, and by subjecting her to stricter scrutiny than similarly situated employee not in the protected class. Defendant ASU intentionally violated Plaintiff Burkhalter's rights pursuant to Title VII.

224.   All acts of discrimination were done wilfully and with malicious and reckless disregard for the rights of Plaintiff Burkhalter.

225.   In taking the above-described actions, Defendant ASU intentionally discriminated against Plaintiff Burkhalter on the basis of her gender and race in violation of Title VII. The actions of Defendant were taken with malice or reckless indifference to the federally protected rights of Plaintiff Burkhalter.

226.   As a proximate consequence of Defendant's actions and the violation of Title VII, as set out in detail above, Plaintiff Burkhalter has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

227.   Plaintiff Burkhalter is suffering and will continue to suffer irreparable injury from the Defendant's conduct as set forth herein unless enjoined by this Court.

228.   Plaintiff Burkhalter has no adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, frontpay, an injunction, and compensatory damages is her only means of securing adequate relief.

229.   As set out in detail above, the Defendants knew, or should have known, of the racial and sexual discrimination and condoned, ratified and otherwise allowed the racially and sexually discriminatory behavior to continue.

230.   Plaintiff Burkhalter suffered damages as a proximate result of these violations, which

were caused by Defendant's policy or custom to allow and condone racial and sexual discrimination in deliberate indifference to rights of Plaintiff Burkhalter.

231.   Plaintiff Burkhalter has satisfied all administrative prerequisites to bringing her Title VII claims:

A.   Plaintiff Burkhalter timely filed her two (2) Charges of Discrimination against Defendant with the Equal Employment Opportunity Commission on May 15, 2009 and May 27, 2009, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

B.   On or about December 28, 2009, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Burkhalter a Notice of Right to Sue on EEOC Charge number 420-2009-02208.  Plaintiff Burkhalter received said Notice on December 31, 2009.  On or about January 7, 2010, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Burkhalter a Notice of Right to Sue on EEOC Charge number 420-2009-02298.  Plaintiff Burkhalter received said Notice on January 11, 2010.

C.   This complaint has been filed within 90 days of Plaintiff's receipt of the notification of Right to Sue letters on her EEOC Charges from the U.S. Department of Justice, Civil Rights Division.

232.   Defendant's conduct violates Title VII.

## COUNT EIGHT

### TITLE VII - RETALIATION - LYDIA BURKHALTER

233.   Plaintiff Burkhalter realleges and incorporates by reference paragraphs 1 - 232 above as though recopied and restated herein in full.

234.    As set out in detail above, Plaintiff Burkhalter has been intentionally discriminated against and retaliated against in violation of Title VII by Defendant ASU for protesting racial and sexual discrimination.

235.    In taking the above-described actions, Defendant ASU intentionally discriminated against and retaliated against Plaintiff Burkhalter for protesting against racial and sexual discrimination. Employees who have not opposed discrimination have not been treated in a similar manner as Plaintiff Burkhalter. The actions of Defendant ASU were taken with malice or reckless indifference to the federally protected rights of Plaintiff.

236.    Plaintiff Burkhalter complained about the retaliatory actions and Defendant failed to take corrective actions to prevent the retaliation. Defendant ASU's actions were in violation of Title VII.

237.    As a proximate consequence of Defendant ASU's actions and the violation of Title VII, Plaintiff Burkhalter has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, and other injuries and damages.

238.    The retaliation against Plaintiff Burkhalter was ongoing and of a continuous nature.

239.    Plaintiff Burkhalter has satisfied all administrative prerequisites to bringing this claim:

A.      Plaintiff Burkhalter timely filed her two (2) Charges of Discrimination against Defendant with the Equal Employment Opportunity Commission on May 15, 2009 and May 27, 2009, which were all filed within 180 days of the commission of the unlawful employment practices alleged herein.

B.      On or about December 28, 2009, the U.S. Department of Justice, Civil Rights

48

Division issued to Plaintiff Burkhalter a Notice of Right to Sue on EEOC Charge number 420-2009-02208.  Plaintiff Burkhalter received said Notice on December 31, 2009.  On or about January 7, 2010, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff Burkhalter a Notice of Right to Sue on EEOC Charge number 420-2009-02298.  Plaintiff Burkhalter received said Notice on January 11, 2010.

      C.      This complaint has been filed within 90 days of Plaintiff's receipt of the notification of Right to Sue letters on her EEOC Charges from the U.S. Department of Justice, Civil Rights Division.

      WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief after a trial by jury:

      A.      Grant Plaintiffs a declaratory judgment that the practices complained of herein are violative of the provisions of Title VII of the Civil Rights Act of 1964 and the amendments thereto;

      B.      Grant Plaintiffs an order enjoining Defendant and all persons acting in concert with Defendant from engaging in discriminatory and retaliatory employment practices;

      C.      Grant Plaintiff reinstatement to their positions from which they were retaliatory and discriminatorily terminated and/or transferred;

      D.      Grant Plaintiffs the appropriate amounts of backpay, interest, benefits, damages, a pay raise with backpay in the amount they would have earned but for the unlawful and discriminatory practices of defendants, and reinstatement to the job positions from which they were discriminatorily denied and/or demoted, or in the alternative, frontpay;

      E.      Grant Plaintiffs an award of compensatory damages, including but not limited to an award for mental anguish and emotional distress;

F.      Award Plaintiffs their costs and expenses, including an award of reasonable

attorney's fees; and,

G.      Award such other relief as may be appropriate.

Respectfully submitted,

/s/ Candis A. McGowan
Candis A. McGowan (ASB-9358-036C)

**OF COUNSEL:**
**Wiggins, Childs, Quinn & Pantazis, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone:      (205) 314-0513
Facsimile:      (205) 314-0713
Email:          cmcgowan@wcqp.com

/s/ Monica L. Arrington
Monica L. Arrington

Arrington & Associates
P.O. Box 250091
Montgomery , AL 36125-0091
Telephone:      (334) 270-2007
Facsimile:      (334) 270-2720
Email:          arringtonmon@aol.com

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL CLAIMS TRIABLE.**

/s/ Candis A. McGowan
**COUNSEL FOR PLAINTIFFS**