[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

———————————

No. 12-13414

———————————

D. C. Docket No. 2:10-cv-00192-WHA-TFM

JACQUELINE WEATHERLY,
CYNTHIA WILLIAMS,
and LYDIA BURKHALTER,

Plaintiffs-Appellees,

versus

ALABAMA STATE UNIVERSITY,

Defendant-Appellant.

———————————

Appeal from the United States District Court
for the Middle District of Alabama

———————————

(September 3, 2013)

Before TJOFLAT and DUBINA, Circuit Judges, and EVANS,[*] District Judge.

DUBINA, Circuit Judge:

---

[*] Honorable Orinda D. Evans, United States District Judge for the Northern District of
Georgia, sitting by designation.

The facts of this case should greatly concern every taxpaying citizen of the State of Alabama, especially because it involves a public institution largely funded with tax dollars paid by the people of Alabama.  This appeal stems from complaints of three former employees of Appellant-Defendant Alabama State University ("ASU"), who allege they were subjected to a hostile work environment and retaliation during their employment.  Following a jury verdict in favor of Appellees-Plaintiffs Jacqueline Weatherly ("Weatherly"), Lydia Burkhalter ("Burkhalter"), and Cynthia Williams ("Williams") (collectively "Appellees"), ASU appeals the district court's denial of its motion to sever Appellees' claims from each other, the district court's order awarding equitable relief, and the final judgment entered in Appellees' favor.  After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we affirm the orders of the district court and the judgment entered on the jury's verdict in favor of Appellees.

I.

A.    *Factual Background*[1]

Appellees' claims center on allegations that they were subjected to discrimination and retaliation at the hands of two ASU employees who served as

---

[1] We apologize for the offensive and demeaning language contained in this opinion, but such language comes directly from the trial record.

their superiors:  Dr. John Knight ("Knight") and LaVonette Bartley ("Bartley").[2]

Knight held various high-level administrative positions at ASU during the seven-

year period in which Appellees collectively submit they were subjected to a hostile

work environment and retaliation.  Specifically, Knight served as special assistant

to the president, acting president, and then as chief operating officer.  In addition,

Knight was, and continues to be, a member of the Alabama State Legislature.

Bartley served under Knight as ASU's associate executive director in the Office of

the Special Assistant to the President.  For clarity's sake, we divide the remainder

of the factual background to recount the facts as they relate to each Appellee

individually.

      1.   <u>Jacqueline Weatherly</u>

Weatherly began working for Bartley at ASU in January 2002.  Weatherly

testified at trial that Bartley's use of the term "nigger" in the workplace was

commonplace.  [R. 226 at 228–30.]  Indeed, Bartley routinely made comments in

Weatherly's presence like, "I'm tired of nigger shit" and would mockingly refer to

ASU's mass transportation as the "nigger bus line."  [*Id.* at 229.]  Weatherly

endured these racial slurs from 2002 "all the way through" 2008 [R. 227 at 62–63],

---

[2] Weatherly and Williams are African-American, and Burkhalter is biracial (part African-American, part Caucasian).  Bartley and Knight are also African-American.

save a brief period during 2003 when Weatherly worked in a different office [R. 226 at 232–34].

In March 2008, Bartley, apparently enraged at Weatherly's inability to multitask, told Weatherly that she was "sick and tired of this nigger shit" and stated "bitch, you need to do what I asked you to do." [*Id.* at 244–45.] Weatherly verbally reported the incident to ASU Human Resources ("HR") and requested a transfer. An HR official responded that nothing could be done. Thereafter, on March 20, 2008, Weatherly submitted a written complaint against Bartley to HR. [*Id.* at 251–52.] Again, Bartley's behavior did not improve and no one at ASU addressed the situation. Due to stress and anxiety Weatherly incurred as a result of her employment at ASU, her doctor "took [her] off work." [*Id.* at 271]. On June 2, 2008, Weatherly was transferred to a different department. She testified that she had been "humiliated," "stunned," "degraded," "hurt[]," and "embarrass[ed]" by Bartley's conduct. [*Id.* at 246; R. 227 at 82.]

### 2.    Lydia Burkhalter

Burkhalter worked as a senior administrative secretary for Knight from 2007 to 2009. She also reported to Bartley and Appellee Williams. At trial, Burkhalter offered testimony that she was subjected to sexual and racial harassment at the hands of Knight and Bartley.

As to Bartley, Burkhalter testified that, starting in August 2008, she heard Bartley "use the word 'nigger,' 'nigga,' 'nigga shit,' 'bitch,' 'stupid bitches,' 'fat bitch,' and 'white bitch'" in the office; Burkhalter also testified that Bartley said things like, "I'm sick of this nigga shit.  These stupid bitches can't do anything right.  And, they ain't nothing but some niggas."  [R. 227 at 261.]  At times, Bartley's racial barrage was directed at Burkhalter, and other times, it was cast elsewhere.  Burkhalter contends that Bartley asked her what race she was, and when Burkhalter said that she was biracial and did not have to choose black or white, Bartley "looked [her] up and down . . . and curled her nose and walked away."  [*Id.* at 265.]  Bartley's abusive conduct was also aimed at Burkhalter's family, as she called Burkhalter's seven-year-old son "a nigger," upsetting him so much that he crawled under his mother's desk and curled up in the fetal position. [*Id.* at 241, 280–81.]

Bartley's verbal assault was not limited to racial comments but included sexual remarks as well.  Bartley described Burkhalter's breasts as "melons" and her derrière as "hams," and Bartley commented on Burkhalter's thong underwear and its accompanying panty lines in the presence of another employee.  [*Id.* at 269–70.]  Bartley also expressed an inappropriate intrigue with Burkhalter's tattoos, telling Appellee Williams that "she should make [Burkhalter] strip to see

5

how many other tattoos [she] had and where." [*Id.* at 281.]  Bartley's inappropriate

behavior was also physical, as she sometimes positioned herself in the office so

that she could touch Burkhalter.  For example, when Burkhalter was in the small

printing/faxing area, Bartley would "come up behind [Burkhalter] and rub her

body up against [Burkhalter's] body." [*Id.* at 273.]   Likewise, while Burkhalter

was sitting at her desk, Bartley "would lean on [Burkhalter's] shoulders and put

her breasts" on Burkhalter.  [*Id.* at 274–75.]

Burkhalter testified that she was also sexually harassed by Knight.  Knight

commented on Burkhalter's appearance, remarking how pretty she was and telling

her "he liked his coffee sweet like [her] and the color of [her] complexion." [*Id.* at

295–96.]  Knight also made awkward and inappropriate requests, asking

Burkhalter to dance for him the way she had danced at a party.  [*Id.* at 305.]  On

Burkhalter's birthday, Knight called her after work and asked what the "wildest

thing" she could do for her birthday would be and told her to think of a "special

thing" she wanted for her birthday and tell him.  [*Id.* at 306.]

Burkhalter's attempts to put an end to her superiors' inappropriate conduct

were unsuccessful.  Although Bartley initially apologized after Burkhalter

complained about her behavior, Bartley then "reverted right back to the way she

was, with her comments, with her slurs . . . [and i]f anything, . . . it became more

6

frequent."  [*Id.* at 282–83.]  For his part, Knight instructed Burkhalter that she

"was not allowed to document anything that happened to [her] in his office; that if

anything was going on, [she] was to notify him verbally and only him."  [*Id.* at

297.]  On May 5, 2009, Burkhalter submitted a written complaint to HR,

describing an incident when Bartley ran at Burkhalter as if to attack her.

Burkhalter's various complaints all went unanswered.

Burkhalter testified that, in May 2009, she began to suffer from migraines,

anxiety, loss of sleep and appetite, and high blood pressure.  She filed an EEOC

charge on May 15, 2009, a Friday.  She was out sick the next Monday, May 19,

and let ASU know she was going to the doctor.  She thereafter faxed a note to HR.

Burkhalter remained out of work the rest of the week and returned the following

week.  Upon Burkhalter's return, she learned that she had been terminated because

she had "abandon[ed]" her job.  [R. 229 at 19.]  Knight testified that he made the

decision to terminate Burkhalter.  Burkhalter testified that when she was

terminated, she felt "humiliated," "degraded," "scared," "worthless," and like

"[t]hey had stripped [her] from [her] life."  [*Id.* at 26.]  Burkhalter explained that

she continues to suffer the effects of her experience at ASU, including anxiety and

trouble sleeping.

       3.    <u>Cynthia Williams</u>

Williams became a permanent employee at ASU in January 2008. Like Burkhalter and Weatherly, she reported to Bartley. Williams testified that in late July or early August 2008, she began to experience a hostile work environment at the hands of Bartley. During this timeframe, Bartley "consistently" referred to Williams as a "nigger[]" and "bitch[]." [R. 225 at 168]. Bartley also made comments such as, "talk to the nigger side of the hand because the white side does not want to hear it" and "we got to dress professional; we don't dress like niggers." [*Id.* at 183, 191.]

Knight made it clear to Williams that he was not interested in hearing about complaints against him or Bartley, telling her "that he was not going to walk on eggshells around his office and nobody can tell him how to run his office." [R. 227 at 284.] Knight also threatened retribution for ASU employees who cooperated with the EEOC in their investigation of Weatherly's claims, warning that "no one was to speak with EEOC and that if they did, they would be dealt with. Terminated." [R. 225 at 200.]

In August 2008, Williams complained to HR, but the director of HR refused to let her file a written complaint, telling Williams that HR was not taking any more complaints against Bartley because there had already been an internal hearing. [*Id.* at 167–68]. Williams tried at least two more times to complain about

8

Bartley to HR but was not allowed to make a complaint.  [*Id.* at 180–81, 201].  On

November 18, 2008, Williams wrote a letter to Knight, copying HR and the EEOC,

complaining of the hostile work environment.  [*Id.* at 202, 208.]  ASU finally

responded to Williams' complaints by terminating her.  Williams felt humiliated

and hurt by Bartley's behavior and threatened by Knight.  After she was

terminated, Williams was unable to find employment for over one year.

### B.    Procedural History

Based on the above facts, Appellees filed suit against ASU on March 4,

2010, alleging they had been subjected to racial and sexual harassment, a hostile

work environment, and various forms of retaliation for protesting the

discrimination.  Shortly thereafter, on March 29, 2010, ASU filed a motion seeking

to sever the claims of each Appellee.  The district court denied that motion without

prejudice, explicitly providing ASU the option to renew its motion after discovery

had been completed.  [R. 21 at 4–5.]  On July 13, 2011, Appellees filed an

amended complaint.

Trial began on February 8, 2012.  Because ASU never filed another motion

to sever Appellees' claims, the district court conducted all three Appellees' trials

together.  ASU moved for judgment as a matter of law as to each claim after the

close of Appellees' case-in-chief and again at the close of all the evidence.  None

of ASU's motions was granted.  Thereafter, the jury took the case under

submission and found that all three women had experienced a hostile work

environment based on their race and that Burkhalter had also been subjected to a

hostile work environment based on her sex.  In addition, the jury found in favor of

Appellees on some of their retaliation claims.  On May 1, 2012, Williams and

Burkhalter filed a motion for equitable relief in the form of front pay.  The district

court granted Williams one year of front pay and Burkhalter two years of front pay.

Final judgment was entered on May 25, 2012, awarding Williams $392,648.23,

Weatherly $309,453.06, and Burkhalter $376,509.65.  [R. 173 at 7.]

The district court entered final judgment on the jury's verdict on May 25,

2012.  At 12:00:46 a.m. on June 23, 2012, ASU filed a renewed motion for

judgment as a matter of law under Rule 50(b) and for a new trial and/or for

remittitur under Rule 59(b).  On June 25, 2012, while that motion was still

pending, ASU filed a notice of appeal.  On July 23, 2012, the district court issued

an order stating that ASU's motion, having been filed 29 days after final judgment

was entered, was untimely as a Rule 50(b) or Rule 59(b) motion, but that it would

be construed as a Rule 60(b) motion, which the court denied.  ASU did not amend

its notice of appeal or file a new notice of appeal after the court's denial of its

motion.

## II.

We review a district court's decision on a motion to sever for abuse of discretion. *Beckford v. Dep't of Corr.*, 605 F.3d 951, 957 (11th Cir. 2010). "We review *de novo* questions concerning jurisdiction." *Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007). We are "obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (internal quotation marks omitted). "We review the district court's decision to grant or deny equitable relief for abuse of discretion, underlying questions of law *de novo*, and findings of fact upon which the decision to grant equitable relief was made under the clearly erroneous standard." *Preferred Sites, LLC v. Troup Cnty.*, 296 F.3d 1210, 1220 (11th Cir. 2002).

## III.

ASU assigns three errors to the district court on appeal. First, ASU argues the district court abused its discretion in denying its motion to sever Appellees' claims. Second, ASU argues the district court should have found ASU's untimely renewed motion for judgment as a matter of law timely, or in the alternative, granted relief under Federal Rule of Civil Procedure 60(b). Finally, ASU argues the district court erred in awarding Appellees Williams and Burkhalter front pay.

11

Unfortunately for ASU, its failure to adhere to the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure and its failure to perfect the record before the district court greatly limits our ability to review these alleged errors.

A.    *The District Court did not err in Denying ASU's Motion to Sever.*

We have appellate jurisdiction to review the district court's order denying severance following the entry of judgment. *See Hofman v. De Marchena Kaluche & Asociados*, 642 F.3d 995, 998 (11th Cir. 2011) (holding that a Rule 21 severance order is appealable following a final judgment). Our scope is limited, however, as we review only for an abuse of discretion. *See Beckford*, 605 F.3d at 957. "When employing an abuse of discretion standard, we must affirm unless we . . . determine that the district court has made a clear error of judgment, or has applied an incorrect legal standard." *Moorer v. Demopolis Waterworks & Sewer Bd.,* 374 F.3d 994, 996–97 (11th Cir. 2004) (internal quotation marks omitted).

Less than a month after the original complaint was filed and before the discovery period, ASU moved the district court to sever the three Appellees' claims from each other. [3] The district court concluded that it would not sever the cases at that point but noted that facts could arise during discovery that would

_____

[3] Appellees later amended their complaint, rendering the initial complaint moot. [R. 42.] Any conceivable error on the part of the district court for denying severance would therefore be based on its review of a now-inoperative complaint.

justify severance.[4]  Faced with the potential of duplicative suits and duplicative

discovery, the court found judicial economy militated in favor of keeping the

Appellees' claims together in order to avoid wasting resources.  [R. 21 at 5.]  The

district court therefore denied ASU's motion to sever without prejudice and

explicitly stated that "ASU w[ould] be allowed to re-raise this issue at an

appropriate time prior to trial."  [*Id.*]  Despite the district court's invitation to

reassert the severance issue after the close of discovery, ASU never did so.

ASU argues the district court abused its discretion by denying its motion to

sever, because Appellees' claims were not based on the same transactions or facts

and should not have been tried together.  [Appellant's Br. at 13–14 (citing R.

227).]  In support of this argument, ASU relies on testimony adduced at trial.  The

problem with ASU's argument is that it relies on evidence uncovered during the

discovery period, *after* the district court had denied its motion to sever.  Thus, such

evidence was not available to the district court when it ruled on ASU's motion.

---

[4] Specifically, the district court found that:

[I]t appear[ed] that there are at least some overlapping factual and legal issues in
the harassment claims and retaliation claims as alleged, and that the claims arise
out of the same occurrences . . . [but i]t may be, upon development of the
evidence in this case, that it ultimately appears that the claims of the three
plaintiffs should be severed for trial.

[R. 21 at 4.]

Moreover, after the close of discovery but before trial, ASU had the opportunity to present evidence to the district court in support of a motion to sever Appellees' claims for trial purposes, yet it failed to do so.  The district court was not responsible for re-raising the issue *sua sponte*.

A trial judge can only abuse discretion he was given the opportunity to exercise.  Because ASU failed to move for severance of Appellees' claims after the close of discovery, the only severance decision available for us to review is the district court's denial to sever the cases for purposes of discovery.  "We accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."  *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001).  Here, the district court's concern for judicial economy easily falls within this "broad discretion."  We therefore find no reversible error.

B.   *We do not have jurisdiction to hear ASU's appeal of the district court's denial of its Rule 50(b) and Rule 59(b) motion.*

ASU argues the district court erroneously construed its untimely Rule 50(b) and Rule 59(b) motion as a Rule 60(b) motion.  In declining to treat ASU's motion as timely, the district court stated it was troubled by ASU's waiting until just three or four minutes before expiration of the 28-day deadline for filing such a motion to begin the electronic filing process.  The district court also noted that ASU's

14

untimely motion largely incorporated previous motions by reference and surmised the motion itself did not take much time to prepare.  While ASU acknowledges that Federal Rules of Civil Procedure 50(b) and 59(b) require the motion to be filed within 28 days after the entry of final judgment, ASU argues that its lateness was not its fault.  Specifically, ASU contends the court's electronic filing system was on the fritz, which caused the motion to be filed 46 seconds late.  Thus, ASU argues the motion should be treated as a timely-filed Rule 50(b) and Rule 59(b) motion.  Alternatively, ASU argues that, even if the motion was properly treated as a Rule 60(b) motion, the district court abused its discretion by denying it.

As a threshold matter,

an appellate court has jurisdiction to review only those judgments, orders or portions thereof which are specified in an appellant's notice of appeal.  Although we generally construe a notice of appeal liberally, we will not expand it to include judgments and orders not specified unless the overriding intent to appeal these orders is readily apparent on the face of the notice.

*Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1528 (11th Cir. 1987) (citations omitted).  Based on the record before this court, we conclude we do not have jurisdiction to decide these issues because ASU has not perfected its appeal.

Generally, in a civil case, a party must file a notice of appeal "with the district clerk within 30 days after entry of the judgment or order appealed from."  FED. R. APP. P. 4(a).  The notice of appeal must "designate the judgment, order, or

15

part thereof being appealed." FED. R. APP. P. 3(c)(1)(B). Here, ASU filed its

notice of appeal while the motion at issue was still pending before the district

court; thus, the notice of appeal did not designate the district court's denial of its

post-trial motion as subject to appeal. More importantly, though, ASU never filed

a subsequent or amended notice appealing the district court's disposition of its

post-trial motion for relief.

To be sure, parties who file timely post-trial motions for relief under Federal

Rules of Civil Procedure 50(b) and 59(b) are not required to wait until the district

court provides a ruling on that motion before they appeal the final judgment.[5] In

order to seek appellate review of the district court's order on said motion, however,

the appealing party *is* required to file a separate notice of appeal or amend its

original notice to designate the motion as subject to appeal. *See* FED. R. APP. P.

4(a)(4)(B)(ii) ("A party intending to challenge an order disposing of any motion

listed in Rule 4(a)(4)(A) . . . must file a notice of appeal, or an amended notice of

appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule

measured from the entry of the order disposing of the last such remaining

motion."). In this context, "the time to file an appeal runs for all parties from the

---

[5] The same rule applies to parties seeking Rule 60(b) relief who file within 28 days of the final judgment. *See* FED. R. APP. P. 4(a)(4)(A), (B)(ii).

entry of the order disposing of the last such remaining motion." FED. R. APP. P. 4(a)(4)(A).

Regardless of whether ASU's motion is treated as a timely-filed Rule 50(b) and Rule 59(b) motion or a Rule 60(b) motion, we lack jurisdiction to decide the issue. In short, ASU missed all applicable deadlines for filing a notice of appeal. On one hand, if ASU's motion is treated as a timely-filed Rule 50(b) or Rule 59(b) motion, ASU's failure to file a separate notice of appeal or amend the previously filed notice of appeal—as required by the tolling provisions of Federal Rules of Appellate Procedure 4(a)(4)(A) and 4(a)(4)(B)(ii)—defeats this court's appellate jurisdiction. On the other hand, if ASU's motion is treated as a Rule 60 motion— not covered by the tolling provisions of Rule 4(a)(4)(B)(ii) because it was not filed within 28 days after entry of final judgment—ASU's failure to follow the general requirements for filing an appeal provided by Federal Rule of Appellate Procedure 3 also defeats this court's appellate jurisdiction. *See* FED. R. APP. P. 3(a)(1) ("An appeal permitted by law as of right from a district court to a court of appeals may be taken *only by filing a notice of appeal* with the district clerk[.]" (emphasis added)).

In sum, because ASU has not filed a notice of appeal with the district court clerk designating as subject to appeal either the district court's denial of its Rule

50(b) and Rule 59(b) motion or the district court's treatment of that motion as a

Rule 60 motion, it has not perfected its appeal.  Accordingly, we do not have

jurisdiction to decide these issues.

     C.    *The District Court did not Abuse its Discretion in Awarding Front Pay.*

    After the jury returned its verdict against ASU, Williams and Burkhalter

requested equitable relief in the form of front pay.  ASU opposed the motion, and

the district court held an evidentiary hearing.  The court awarded Williams one

year of front pay and Burkhalter two years of front pay.  [R. 172.]  ASU offers

three arguments as to why the district court's award of front pay amounted to an

abuse of discretion:  (1) Williams and Burkhalter did not mitigate their damages;

(2) they had unclean hands; and (3) ASU had a legitimate reason for firing them.

ASU's first argument is unavailing, and it has waived its other two arguments.

    "In addition to back pay, prevailing Title VII plaintiffs are presumptively

entitled to either reinstatement or front pay."  *EEOC  v. W&O, Inc.*, 213 F.3d 600,

619 (11th Cir 2000) (internal quotation marks omitted).  "In deciding whether to

award front pay, rather than reinstatement, courts look to whether discord and

antagonism between the parties would render reinstatement ineffective as a make-

whole remedy."  *Id.* (internal quotation marks omitted).  ASU, Williams, and

Burkhalter each agreed that reinstatement was not a proper remedy because of the

level of discord between the parties.  Consequently, ASU does not claim the

district court should have awarded reinstatement instead of front pay.  Rather, ASU

argues neither was appropriate.

A prevailing Title VII plaintiff is "required to mitigate damages by being

reasonably diligent in seeking employment substantially equivalent to the position

she was denied."  *Smith v. Am. Serv. Co. of Atlanta*, 796 F.2d 1430, 1431 (11th Cir.

1986).  ASU contends that Williams failed to mitigate her damages because "she

willingly accepted a lower-paying job."  [Appellant's Br. at 27.]  As to Burkhalter,

ASU claims that she failed to mitigate damages because she enrolled in nursing

school.  [*Id.* at 28.]  We disagree.

Both Williams and Burkhalter presented evidence that they attempted to

mitigate their damages.  Williams testified that she looked for work from January

2009 until early 2011.[6]  [R. 215 at 29–30].  Burkhalter presented evidence that she

looked for a job before enrolling in nursing school and continued to work full-time

while going to school part-time.  [*Id.* at 9].  Based on this testimony, the court did

---

[6] ASU also argues that even if Williams was entitled to some front pay, she was not
entitled to as much as the district court awarded her.  ASU has waived that argument because it
did not challenge the district court's calculation of front pay.  *See Juris v. Inamed Corp.*, 685
F.3d 1294, 1325 (11th Cir. 2012) ("[I]f a party hopes to preserve a claim, argument, theory, or
defense on appeal, [it] must first clearly present it to the district court, that is, in such a way as to
afford the district court an opportunity to recognize and rule on it.").

not err in finding that Williams and Burkhalter[7] fulfilled their obligation to mitigate.

ASU's second argument—that Williams and Burkhalter are barred from recovering front pay due to their own unclean hands—has been waived.   Despite ASU's representations to the contrary, it failed to argue to the district court that Williams and Burkhalter had unclean hands.   Although ASU argued before the district court that the women had tried to hurt ASU by doing things like "contact[ing] media outlets to disparage the name and character of ASU as well as [Knight], [Bartley], and counsel for ASU" [R. 163 at 5], ASU highlighted that conduct before the district court only in arguing that reinstatement was not a possible remedy.   It only now argues that same conduct shows the women had unclean hands and are estopped from recovering front pay.

In attempting to save yet another procedurally defective argument, ASU seeks to convince us that the district court "misconstrued" its argument on this point.   [Appellant's Br. at 28.]   This contention is devoid of merit.   It was ASU's responsibility to clearly present its arguments to the district court "in such a way as to afford the district court an opportunity to recognize and rule on it."   *Juris*, 685 F.3d at 1325 (internal quotation marks omitted).   Nowhere in its opposition to the

---

[7] *See Smith*, 796 F.2d at 1432 (holding that a plaintiff who had enrolled full-time in cosmetology school had not failed to mitigate because she had enrolled only after looking for a job, and she continued to work part-time while in school).

motions for front pay did ASU argue unclean hands or that Williams or Burkhalter were estopped from recovering equitable relief.  Those arguments were presented for the first time on appeal and have therefore been waived.  *Id.*

ASU's final argument as to this issue is that Williams and Burkhalter were not entitled to front pay, because ASU had a legitimate non-discriminatory reason to terminate them.  ASU does not, however, make any arguments on this point, but rather, incorporates by reference the arguments it made before the district court. [Appellant's Br. at 26 n.7.]  Incorporating by reference to earlier filings is not a permissible way to present arguments to this court.  *See Four Seasons Hotels & Resorts v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004) ("By attempting to 'incorporate' all of the arguments it made below, and thus exhorting this panel to conduct a complete review of its district court brief, [the party] . . . makes a mockery of our rules governing page limitations and length[.]").  ASU has therefore waived this argument as well.  *See id.*

## IV.

We are left to speculate who is in charge at ASU.  Regardless, however, we are unnerved by the apparent acquiescence to, if not outright condoning of, the abusive work environment created by its high-level employees.  Such conduct simply has no place in a work environment, especially at a publicly funded

university.  Additionally, we are troubled by ASU's attorneys' inability to adhere to court procedures and deadlines.  Timeliness is imperative in the practice of law, and attorneys should not expect sympathy from this court due to their own carelessness.

For the foregoing reasons, we affirm the district court's order awarding of equitable relief, its order denying the motion to sever, and the final judgment entered in favor of Appellees.  We also decline to decide Appellant's appeal of the district court's denial of its renewed motion for judgment as a matter of law due to lack of appellate jurisdiction.

**AFFIRMED in part and DISMISSED in part.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 03, 2013

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  12-13414-AA
Case Style:  Jacqueline Weatherly, et al v. Alabama State University
District Court Docket No:  2:10-cv-00192-WHA-TFM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Eleanor M. Dixon, AA at (404) 335-6172.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs