**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JACQUELINE WEATHERLY, | ) | |
| CYNTHIA WILLIAMS, and LYDIA | ) | |
| BURKHALTER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:10CV192-WHA |
| | ) | |
| ALABAMA STATE UNIVERSITY, | ) | (wo) |
| | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

## I.  Facts and Procedural History

This cause is before the court on the Plaintiffs' Motion for Attorneys Fees (Doc. #175),

an Amended Motion for Attorneys Fees (Doc. #181), a Motion Seeking Leave to Attach Omitted

Exhibits A & B (Doc. #196),[1] a Motion for Leave to File Omitted Exhibit C (Doc. #198), a

Motion for Leave to File Supplemental Evidence in Support of Response to Show Cause (Doc.

#204), a Motion for Leave to File (Doc. #205), a Supplemental Motion for Attorneys Fees by

Lydia Burkhalter (Doc. #250), a Supplemental Motion for Attorneys' Fees filed by Lydia

Burkhalter (Doc. #258), a Consent Motion for Leave to File (Doc. #260), a Motion to Substitute

(Doc. #261), a Motion to Modify (Doc. #262), a Motion to Modify (Doc. #263), a Motion to

---

[1]  With respect to the motions for leave to file omitted exhibits, these will be granted. The submissions are evidence and argument in rebuttal of the Defendant's interpretation of previously submitted evidence and, therefore, will be considered as rebuttal. The Eleventh Circuit has indicated that when a defendant objects to specific hours, the proper procedure is for the plaintiffs seeking fees to "supplement the record . . . ." *ACLU v. Barnes*, 168 F.3d 423, 433 (11th Cir. 1999).  The Consent Motion to file and substitute are also due to be GRANTED.

Seal Exhibits (Doc. #265), a Motion for Attorneys' Fees filed by Lydia Burkhalter, a Motion to Strike Response in Opposition (Doc. #269), and a Motion by Jacqueline Weatherly and Cynthia Williams (Doc. #271) for attorneys' fees which originally was filed in the Eleventh Circuit Court of Appeals and which the court transferred to this court. (Doc. #270).

This action was brought under Title VII of the Civil Rights Act of 1964.   Plaintiffs were represented by attorneys Candis McGowan ("McGowan"), Joseph L. Fitzpatrick, Jr. ("Fitzpatrick"), and Monica Arrington ("Arrington").

The case was originally set for trial in October 2011, but was reset by Order of the court because the Motion for Summary Judgment included voluminous briefs and exhibits and complex issues.  (Doc. #83).   The Motion for Summary Judgment subsequently was granted in part and denied in part.  (Doc. #89 at p. 59-60).   The Motion was granted as to two retaliation claims by Plaintiff Jacqueline Weatherly ("Weatherly"), and as to race and gender discrimination in termination claims by Plaintiff Lydia Burkhalter ("Burkhalter").   The Motion for Summary Judgment was denied as to all Plaintiffs' claims for racial harassment and sexual harassment in Counts One and Two of the Amended Complaint; disparate treatment gender and race claims and retaliation claims by Weatherly in Counts Three, Four, and Nine of the Complaint; gender and race disparate treatment claims and retaliation claims by Jacqueline Williams ("Williams") in Counts Five and Six; and gender and race disparate treatment claims and retaliation by Burkhalter in Counts Seven and Eight.   The court declined to exercise supplemental jurisdiction over the state law claim in Count Ten.

Jury selection commenced on February 6, 2011, and at the conclusion of the trial, on February 17, 2011, the jury returned a verdict, finding in favor of Weatherly on her racial

harassment claim and three of her eight retaliation claims; in favor of Williams on her racial harassment claim and three of four retaliation claims; and in favor of Burkhalter on her racial harassment and sexual harassment claims and three of her six retaliation claims. (Doc. #150). The jury awarded $350,000.00 to Weatherly for emotional pain and anguish and $9,453.06 for lost leave time.  (Doc. #150).  The jury awarded Williams $213,500.00 in emotional pain and mental anguish damages and $141,573.76 for lost wages and benefits.  The jury awarded Burkhalter $230,000.00 in damages for emotional pain and mental anguish and $94,592.51 in net lost wages and benefits.  (Doc. #150).  The case was unsuccessfully mediated pre- and post-trial. The court applied the statutory cap of $300,000 (42 U.S.C. § 1981a(b)(3)(D)), to the award of mental anguish damages to Weatherly.  (Doc. #158).

The court then held an evidentiary hearing on a motion for equitable relief by Williams and Burkhalter, and on May 25, 2012 awarded front pay and prejudgment interest on back pay. (Doc. #172).  The same day the court entered final judgment against the Defendant, Alabama State University, and in favor of Weatherly for a total of $309,453.06, Williams for $392,648.23, and Burkhalter for $376,509.65, plus costs.  (Doc. #173).[2]

The Plaintiffs moved for attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988, and supplemented that request.[3] (Doc. #181 p.2).

_____

[2] This judgment has not yet been paid, due to Alabama State University's appeal.  The Plaintiffs are entitled to an additional amount of interest on their recoveries at the statutory rate from May 25, 2012 until the judgment is satisfied.  *See* 28 U.S.C. § 1961.

[3] 42 U.S.C. § 1988(b) provides as follows:

the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

On June 23, 2012, the Defendant filed a Renewed Motion for Judgment as a Matter of Law (Doc. #182), which this court denied on July 23, 2012 (Doc. #206).

On June 25, 2012, the Defendant filed a Notice of Appeal to the Eleventh Circuit Court of Appeals.

In September 2012, attorneys Kristin Parsons ("Parsons"), Mark Gonzalo Montiel ("Montiel"), and Harold William Wasden ("Wasden") entered appearances in this case on behalf of Plaintiffs Weatherly and Williams.   McGowan, Arrington, and Fitzpatrick then moved to withdraw as attorneys for Weatherly and Williams, and moved for leave to file a lien for reasonable attorneys' fees and costs.

On September 20, 2012, this court granted the Motion to Withdraw, and McGowan, Arrington, and Fitzpatrick continued to represent only Plaintiff Burkhalter.  (Doc. #245).   The court also ordered a lien placed on behalf of McGowan, Arrington, and Fitzpatrick, at their request, against any recovery by Weatherly and Williams for reasonable attorneys' fees for work performed for them until September 17, 2012.  (Doc. #245).

Oral argument was held on the Defendant's appeal to the Eleventh Circuit Court of Appeals.  The Eleventh Circuit affirmed this court's Order awarding equitable relief, an Order denying a pre-trial motion to sever, and the final judgment in favor of the Plaintiffs, and declined to decide the appeal of the denial of the renewed motion for judgment as a matter of law due to lack of appellate jurisdiction.  (Doc. #247).

After the Plaintiffs' initial submission of a request for attorneys' fees, McGowan, Arrington, Fitzpatrick, and Sam Heldman ("Heldman"), attorneys for Plaintiff Burkhalter, supplemented the request for attorneys' fees and expenses to include time and expenses incurred

4

post-trial, and on appeal.  The court gave the Defendant time in which to respond to the supplemental matters.

Williams and Weatherly subsequently filed Motions in this court to modify the attorneys' charging lien.

The Eleventh Circuit Court of Appeals then transferred to this court for consideration a motion by Burkhalter for attorneys' fees and expenses post-trial, as well as a motion by Weatherly and Williams for post-trial fees (Doc. #270).

In total, the Plaintiffs seek $1,415,820.00 in attorneys' fees, $51,750.00 in paralegal fees, and $33,970.40 in expenses for counsel for Burkhalter and trial counsel for Weatherly and Williams (Doc. #258), and $141,820.00 in attorneys' and paralegal fees for post-trial counsel for Weatherly and Williams (Doc. #271).

## II. Discussion

### A. Attorneys' Fees

The Defendant, Alabama State University, ("ASU"), acknowledges that the Plaintiffs are prevailing parties, and as such are entitled to some recovery of attorneys' fees, but raises three primary objections to the Plaintiffs' specific fee requests.  First, ASU opposes some of the hourly rates submitted by Plaintiffs; second, ASU objects to some of the billing items, asserting that the billed hours are excessive for the tasks performed, or otherwise objectionable; and third, ASU argues that the court must reduce the total fee award for time expended up to trial because Plaintiffs obtained a favorable jury verdict on only some of their claims.  The court separately addresses each of Defendant's arguments regarding fees.

In evaluating a motion for attorneys' fees, this court is to use the "lodestar" approach.

*See Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988).  Under this approach, the court must determine the "lodestar" figure. *Id.* The "lodestar" figure equals the reasonable hourly rate multiplied by the hours reasonably expended and represents a presumptively reasonable fee. *Id.*

Factors to be considered by the court, known as the *Johnson* factors, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) the existence of a contingent-fee contract; (7) time limitations imposed by the client or the circumstances; (8) the amount of damages and type of relief involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.*; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

### 1.  Hourly Rate

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Norman*, 836 F.2d at 1299.  The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Id.* at 1303. To satisfy this burden, the fee applicant is required to submit to the court: (1) specific and detailed evidence from which it can determine the reasonable hourly rate for the community and (2) records evidencing time spent on different claims and setting out with sufficient particularity the general subject matter of the time expenditures so that the court can assess the time claimed for each activity. *A.C.L.U. of Ga. v.*

*Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

In this case, the Plaintiffs seek a rate of $400.00 per hour for the time of their attorneys McGowan and Heldman, $325.00 per hour for their attorneys Fitzpatrick, and Arrington, $275.00 per hour for attorneys Rachel McGinley ("McGinley") and Jacob Kiser ("Kiser"), and $125 an hour for paralegal support (Doc. #181 at p.3); (Doc. #250 at p.4).

Plaintiffs Weatherly and Williams also seek an hourly rate of $300 for attorneys Montiel and Wasden, $250 for Parsons, $200 for Gillian Egan ("Egan"), $115 for law clerk Rachel Miller ("Miller"), and $125 for paralegal Patti Grove ("Grove"), who represented those two Plaintiffs post-trial (Doc. #271 at p.7).

ASU responds that McGowan and Heldman should be compensated at a rate of $250.00 per hour, Fitzpatrick and Arrington at $200.00 per hour, McGinley and Kiser at $175 an hour, and paralegal support should be compensated at a rate of $80 per hour. ASU also responds that Montiel and Wasden should be compensated at $250 per hour, but agrees that Parson's and Egan's claimed rates are reasonable. (Doc. #275 at p.14).[4] ASU further contends that if time expended by Grove and Miller is compensated, the hourly rate should be $80.

In evaluating the evidence offered to support these proposed rates, the court will apply the *Johnson* factors relevant to such inquiry:

a. The court addresses together the factors of the time and labor required, the skill requisite to perform the legal services properly, and the novelty and difficulty of the questions.

---

[4] The court notes that ASU is in agreement that $250 is a reasonable rate in the relevant community for Parsons, but asks the court to apply the same rate to attorneys with substantially more experience, and substantial experience in civil rights cases. The court cannot conclude that applying the same rate of $250 is reasonable in this case.

The Plaintiffs' attorneys' affidavits set out the scope of the litigation, including the E.E.O.C. administrative investigation; discovery comprised of thousands of pages of documents and multiple depositions, including three Rule 30(b)(6) depositions; responding to a motion to sever; responding to a motion for summary judgment involving voluminous evidence; extensive unsuccessful settlement negotiations; trial, which began with jury selection on February 6, 2011, and ended with a jury verdict on February 17, 2011; an evidentiary hearing on equitable relief; post-trial motions; and appellate briefing and oral argument.

This case required substantial time and labor, as evidenced in part by the fact that trial of the case was continued by the court on the basis of the volume of material presented at the summary judgment stage. As to the skill requisite to perform the legal services and the novelty and difficulty of the questions, the Plaintiffs' claims included acts of two types of harassment, as well as multiple instances of retaliation, and therefore, while not necessarily novel, were complex and required expertise in employment law to litigate. The brief filed on appeal required skills in distilling voluminous information and presented jurisdictional and waiver arguments ultimately relied upon in the Plaintiffs' appeal.

b. The preclusion of other employment by the attorney due to acceptance of the case–

Fitzpatrick states that as a solo practitioner, due to deadlines and appearances in this case, he had to decline several new cases. (Doc. #176 at p.18). Arrington also is currently a solo practitioner. (Doc. #175-4 at p. 1). Montiel practiced law during this time as a solo practitioner with the assistance of law clerk Miller, who is now a licensed attorney. (Doc. #273).

c. The customary fee for similar work in the community--

The most extensive evidence presented by the parties as to the reasonableness of the

hourly rates to be accessed in this case comes in the form of attorney affidavits which offer opinions as to the customary fee for similar work in Montgomery, Alabama.

Plaintiffs' attorneys McGowan, Heldman, Arrington, Fitzpatrick, Montiel, and Parsons submit their own affidavits.  Fitzpatrick states that his current hourly rate is between $275 and $375 an hour.  (Doc. #176 at p.10).  Arrington states in her affidavit that her rate falls within the customary rate of attorneys in this area for similar services which she states is $250 to $525 an hour.  (Doc. #175-4 at p.4).

McGowan states in her affidavit that she has received awards for attorneys' fees in a range of $400.00 to $525.00 per hour.  She states that her hourly rate is $450, and that the current hourly rate for associates with three to six years of experience is $250 to $275 per hour.  (Doc. #175-1- at p.16).

McGowan further states that paralegals in her firm are billed at $125.00 per hour.  (Doc. #175-1 at p.6).  Montiel's hourly rate is $300 per hour.  (Doc. #273).  Parsons' hourly rate is $260 in 2013, Wasden's $325, Egan's $200, and Grove's $145.  (Doc. #274 at p.9).

In addition to their attorneys' affidavits, the Plaintiffs also submit the affidavits of attorneys William Baxley, James Anderson, Alicia Haynes, and Julian McPhillips.  Two of these attorneys are Montgomery attorneys, and two are Birmingham attorneys who state that they regularly practice in Montgomery.  William Baxley and James Anderson also submitted supplemental declarations.

William Baxley states in his initial affidavit that he is knowledgeable of the reputation of McGowan and her firm in litigating violations of Title VII.  He states that in his opinion the customary rate for attorneys with skills and expertise similar to McGowan is $350 to $450 an

hour, the customary rate for attorneys with skills and expertise similar to Arrington and Fitzpatrick ranges from $300 to $400 an hour, and the customary rate for associates similar to Kiser and McGinley ranges from $250 to $300 per hour.  (Doc. #175-3 at p.53).  In his supplemental declaration, William Baxley states that $400 is a reasonable rate for appellate work in this district.  (Doc. #250-4).  Other affiants presented by the Plaintiffs, James Anderson and Alicia Haynes, offer their opinions that the $400 is within the range of reasonable rates for an attorney of McGowan's experience, $300 is within the range for Arrington and Fitzpatrick, and $275 is within the range for Kiser and McGinley.  (Doc. #175-3 at p.59, 66).  In his supplemental affidavit, James Anderson says that $400 an hour is a reasonable rate for appellate work in this district.  (Doc. #250-5).

James Anderson also states that paralegals are compensated in a range from $75 to $120 an hour.  Alicia Haynes also states that paralegals in this case should have an hourly rate of $125 per hour. (Doc. #175-3 at p.66-7).  Julian McPhillips sets a range for paralegals at $75 to $125 an hour. (Doc. #175-3 at p.73).

In response to the affidavits filed in support of the trial counsel's fee petition, as well as in response to post-trial counsel's petitions, ASU submits affidavits from attorneys, including ASU's counsel.  An affiant for ASU, David Burnick, a Birmingham attorney who has practiced in Montgomery, offers the opinion that experienced practitioners in Title VII cases would expect to have an hourly rate within a range of $175.00 to $325.00 an hour in Montgomery.  (Doc. # 189-1 at p.6).  ASU also provides an affidavit of Montgomery attorney James Seale in which he states that the range for attorneys in Montgomery with 20 years of experience is $250 to $300 per hour, and attorneys with ten to twenty years of experience have an hourly rate in a range of

$200 to $225 per hour (Doc. #189-2).  ASU also presents evidence that the range for paralegal

hourly rates is $60 to $85 (Doc. #189-1 at p.7), or $65 to $85 (Doc. #189-2).

     d.  The existence of a contingent-fee contract--

     McGowan has stated in her affidavit that Plaintiffs Williams and Burkhalter were not in a

financial position to pay attorneys on an hourly basis, so that counsel undertook contingent fee

representation.  (Doc. #175-1 p. 19).  For Plaintiff Weatherly, Plaintiffs' counsel was paid a

maximum maintenance rate by the Alabama Education Association of $100 per hour.

According to McGowan, when contingent representation is undertaken, the attorneys undertake

the risk of paying expensive costs, and a risk of loss of payment for the number of hours

required, which are so significant that a law firm cannot undertake a case such as this one

without the payment of hourly rates sufficient to compensate for that risk. (Doc. #175-1 at p.18).

     e.  The parties have not presented evidence to show that the time limitations imposed by

the client or the circumstances is a relevant consideration is setting the reasonably hourly rates in

this case.

     f.  The experience, reputation, and ability of the attorneys–

     McGowan has been licensed to practice law in the State of Alabama since 1986.  (Doc.

#175-1 at p.2).  She specializes in labor and employment law and civil rights.  She has taught

seminars and continuing legal education classes on labor and employment law, including claims

under Title VII.  (Doc. #175-1 at p.4).   Fitzpatrick has practiced law since April 1999, and states

that he practices extensively in the area of civil rights.  (Doc. #176 at p. 20).  Arrington has been

practicing law since April of 1996.  (Doc. #175-4 p. 1).

     Heldman has practiced law since 1990.  (Doc. #250-2).   He has experience in brief-

writing and oral argument in the Eleventh Circuit and has practiced before the United States Supreme Court.  (Doc. #250-2 at p. 2-3).

Kiser has been licensed to practice law since 2007, and McGinley since 2005.  (Doc. #175-1 at p.6).  The paralegals who offered support and who are still employed with McGowan's firm had 13 and 6 years of experience, respectively.  (Doc. #175-1 at p.6).

Montiel has been licensed to practice law since 1981.  He states in his affidavit that this case required special familiarity with appellate standards involving racial and sexual hostile environments, and retaliation, which are skills that are not gained in the general practice of law, and required attorneys experienced in Title VII cases to appeal.  (Doc. #273 p. 8).  Montiel states that while he worked on the appeal in this case, he had a law clerk, Miller, working under his direction, and although she is now an associate attorney, he has only requested she be compensated at the law clerk hourly rate.

Parsons states in her affidavit that she has been licensed to practice law since 2002, has a employment defense litigation practice, and is a lecturer on employment law (Doc. #274). Wasden has been licensed to practice law since 1981.  Egan has been licensed to practice law since September 2011.  Grove is a paralegal with twenty years of experience in civil litigation work, with ten of those years as a litigation paralegal.

g.  The "undesirability" of the case–

McGowan states in her affidavit that attorneys are usually unwilling to undertake protracted hostile environment and retaliation cases because fees awarded typically are not sufficient to compensate for disruptions to practice.  Fitzpatrick states in his affidavit that witnesses in this case who gave testimony on behalf of ASU included a member of the Alabama

legislature, the Chairman of the Montgomery County Commission, and a Alabama Circuit Court Judge, making the case particularly difficult.  (Doc. #176 at p.17).

Montiel states in his affidavit that attorneys in the relevant legal market are unwilling to undertake protracted appeals in hostile environment and retaliation cases because the fees typically awarded do not compensate for the risks and disruptions to practice.  (Doc. #273 at p. 7).

h.  The nature and length of the professional relationship with the client.  Fitzpatrick states in his affidavit that this representation was a one-time representation, and so future legal employment was not expected from this professional relationship.  (Doc. #176 at p.19).

i.  Awards in similar cases–

The affidavits provided by the Plaintiffs cite to cases in which McGowan was awarded a fee of $400 per hour, $525 per hour, and $300 per hour. (Doc. #175-3 at p.67-8).  The highest of these rates, however, was awarded in multi-district litigation, which is a substantially more complicated matter.  (Doc. #175-3 at p.67 citing *In re Tyson Foods, Inc., Fair Labor Standards Act Litigation*, MDL No. 1854, 4:07-md-01854-CDL (M.D. Ga. January 23, 2012)).

In *Hall v. Lowder Realty Co., Inc.*, 263 F. Supp. 2d 1352, 1369 (M.D. Ala. 2003), paralegals were awarded fees based on a rate of $65 and $75 an hour.  In *Hall*, the court noted that it had previously found paralegal work to be compensable between $50 and $70 per hour. *Id.*

In response to the fee petitions of both trial counsel and post-trial counsel, ASU cites civil rights cases from the United States District Court for the Middle District of Alabama in which trial counsel was awarded a maximum rate of $200 per hour, *Ferrari v. E-Rate Consulting Serv.*, No. 2:09cv49-MEF, 2011 WL 1187850 (M.D. Ala. March 30, 2011); $250 per hour, *see*

*Haynes v. City of Montgomery*, No. 2:06cv1093-WKW, 2008 WL 4495711 (M.D. Ala. Oct. 6, 2008); and $275 per hour, *Hall*, 263 F. Supp. 2d at 1369 (fees awarded for non-contingent work). In *Hall*, the court noted that it had previously determined that the customary fee in Montgomery, Alabama for civil rights cases ranges from $125 to $350. *Id.* at 1366.

Evaluating all of the relevant factors, and especially in light of awards in similar cases, the court finds that some of the rates requested by the Plaintiffs are unreasonably high. The court also finds, however, that the maximum rate, and some other hourly rates, reasonably awarded in this case should be higher than that suggested by ASU in brief, given the involved, and time-consuming nature of this particular civil rights case against a public entity; given that three attorneys were solo practitioners forced to forgo employment; that one trial attorney has a great deal of experience and expertise in civil rights cases; another attorney significant experience in appellate work; others have extensive experience in general litigation; and that representation of two of the Plaintiffs was undertaken on a contingent fee basis. The court also, however, finds some rates acceptable to ASU to be reasonable, or higher than is reasonable.

Upon consideration of all of the relevant factors, and based on the court's experience with the relevant market of Montgomery, Alabama, and with similar employment discrimination cases, the court finds that it is reasonable to compensate McGowan, Heldman, Montiel and Wasden near the top of the range of fees for similar cases in this market which has been acknowledged by ASU, and to compensate the other attorneys commensurate with their experience below that rate. Therefore, the following rates are the reasonable hourly rates to be applied in this case:

| | |
|---|---|
| Candis McGowan | $300 per hour |
| Sam Heldman | $300 per hour |
| Mark G. Montiel | $300 per hour |
| H. William Wasden | $300 per hour |
| Monica Arrington | $225 per hour |
| Joseph L. Fitzpatrick, Jr. | $225 per hour |
| Kristin Taylor Parsons | $225 per hour |
| Jacob Kiser | $175 per hour |
| Rachel McGinley | $175 per hour |
| Gillian Egan | $150 per hour |
| Rachel Miller | $100 per hour |
| Paralegals | $ 80 per hour |

### 2.  Hours Reasonably Expended Pre- and During Trial

The Plaintiffs seek recovery for 1,078.60 hours for McGowan, 1,373.20 hours for Arrington, 915.80 hours for Fitzpatrick, 33.50 hours for Kiser, 42 hours for McGinley, and 374.10 hours for paralegal support.  (Doc. #181 p.3).

ASU argues that the total number of hours claimed by the Plaintiffs is excessive.   ASU points to specific tasks and challenges hours claimed as follows:

a.  Duplicative entries–ASU has set out times in its Exhibit 5 which it identifies as being duplicative.  These include entries for time expended more than once for a task with the same description, so that ASU interpreted the entries as two time entries for the same task.  The

Plaintiffs, however, have demonstrated satisfactorily in rebuttal that what may have appeared to be two entries for the same task were actually entries for different parts of a task.  (Doc. #196-1 Ex. A and B  #198-1).  Therefore, the court will not reduce the time indicated for alleged duplicative entries.

    b.  Redundant and not recoverable hours–ASU submits Exhibit 6 which its states depicts tasks performed by the same timekeepers and that the Plaintiffs have failed to show that the duplicate hours reflect a distinct contribution.

    "There is nothing inherently unreasonable about a client having multiple attorneys." *ACLU*, 168 F.3d at 432.  Therefore, a reduction for redundant hours "is warranted only if the attorneys are unreasonably doing the same work. *Id.* Time spent by two or more attorneys can be compensated, as long as it "reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Id.* "Thus, a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation."  *Id.*

    First, the court notes that ASU's objection on the basis of redundancy is insufficient because, although ASU has identified one timekeeper in its exhibit, and claimed redundant hours, ASU has not pointed to an entry of another timekeeper to establish redundancy.

    Even without a specific identification of time allegedly redundant of other time, in their replies to ASU's submission, each of the three Plaintiffs' attorneys offers an explanation of their roles in the case leading up to and including trial.  For example, McGowan describes her role as being lead counsel and counsel directly responsible for the depositions and trial cross-

examination of ASU officials, drafting most briefs and motions, including summary judgment briefs and post-trial motions.  (Doc. #175-1 at p.10).   In a supplemental submission, the Plaintiffs also explain that a paralegal's attendance at the post-trial evidentiary hearing was necessary because she calculated the front pay charts and until ASU agreed to the amount at the hearing, it was not known whether the paralegal would have to testify.  (Doc. #198-1 at p. 4).  Arrington explains that she performed particular tasks at trial, such as answering client questions so that her co-counsel could focus on the trial.  (Doc. #196-1).  The court, having observed the trial, finds this to have been reasonably necessary.  Fitzpatrick explains that he was responsible for the trial preparation of Plaintiffs Williams and Weatherly and was responsible for the direct or cross examination of 11 of the 18 witnesses who testified at trial.  (Doc. #176 at p.6).

    This is not a case in which the attorneys failed to supplement the record in an attempt to clarify the role of various attorneys.  *See ACLU*, 168 F.3d at 433.  The court cannot conclude that ASU has adequately challenged hours as being redundant, in light of the explanations offered, to deduct specific hours.[5]

    c.  Clerical or administrative hours–in Exhibit 7, ASU has identified multiple entries which it contends are clerical tasks performed which are not recoverable.  One of these is  the entry for Arrington, "Appointments for Clothing Inspection."  Arrington explains that this entry refers to an exchange of exhibits for visual inspection at the request of Defendant to review

_____

    [5]  At trial, however, there were two Plaintiffs' attorneys conducting examinations of witnesses, an attorney performing separate functions which did not include any witness examinations, and a paralegal.  Therefore, while the court does not find that ASU has adequately identified hours to be deducted for purposes of the lodestar calculation, the court will consider this factor in determining the reasonableness of the lodestar calculation in light of the Plaintiffs' overall success.

clothing given as a gift to a Plaintiff by LaVonette Bartley, (Doc. #196-1 at p.14), which formed

the basis of one of the Plaintiffs' allegations of harassment.  The clarification provided

demonstrates that the task was not clerical.

The Plaintiffs also argue that many of the tasks of McGowan's identified as clerical are

not merely clerical.   For example, one challenged entry, an entry on 2/9/2012, states that

McGowan e-mailed a paralegal regarding serving subpoenas on witnesses.  (Doc. #189-7 at p.7).

The Plaintiffs have explained that McGowan has to instruct paralegals on serving subpoenas, and

is the attorney responsible for making sure that documents are served or filed.  Arrington

similarly explains that her .3 entry for "subpoena addresses," involved giving instruction to an

investigator about addresses for various witnesses.  (Doc. #196-1 at p.14).  The Plaintiffs have

also explained that Kiser's time spent on discovery responses, which is challenged in Exhibit 7,

is not due to be deducted as clerical, because the discussion was of discovery and its legal effect

on the case.   The court agrees that these explanations demonstrate that the entries were not for

clerical tasks.

Other entries, however, are not explained, such as entries by McGowan indicating

"receipt of emails" or "calls regarding" the scheduling of meeting times or reserving a

conference room.  (Doc. #189-7).   While the Plaintiffs say in their supplemental response that

the time entries relating to meetings with clients and witnesses are not administrative work, these

entries which regard the scheduling of meetings appear to have more clerical aspects.  *See*

*Johnson v. TMI Management Systems, Inc.*, No. 11-0221-WS-M, 2012 WL 4435304, at *5 (S.D.

Ala. Sept. 26, 2012) (identifying the following as clerical tasks: "telephone call to client re:

scheduling appointment").  The Plaintiffs appear to recognize that some parts of the tasks are

clerical (Doc. #198-1 at p.4), but state that the entire amount identified by ASU is not due to be deducted.

The Plaintiffs also acknowledge that some paralegal time claimed might have been spent on clerical tasks, but state that at most it was 9.1 hours, rather than 81 hours as claimed by ASU. (Doc. #198-1 at p.7).

The court has reviewed the 22 page exhibit submitted by ASU with times which it has identified as being clerical.[6]   Although the Plaintiffs have not necessarily conceded that a reduction in paralegal hours for clerical tasks is due, the court agrees with the Plaintiffs' valuation of the paralegal time viewed as clerical as being 9.1 hours, and will deduct 9.1 hours from the claimed 374.10 hours for paralegal support.

It also appears to the court that there are thirty entries of .1 of an hour by McGowan which refer to tasks which should be considered clerical.  (Doc. #189-7 at p. 2, 3, 5, 6, 8).   The Eleventh Circuit has indicated that time spent on clerical tasks is still compensable, but just not at the attorneys' rate.  *Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1306 (11th Cir. 1988) (stating "a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical, or which not require the full exercise of an attorney's education and judgment.").  In this case, rather than attempt to apply a different rate, the court will follow the approach of another district court and deduct "one-half of the hours properly assigned to nonlegal tasks. . . ."  *E.E.O.C. v. Autozone, Inc.*, No. 10cv11648-WGY, 2013 WL 1277873, at *8 (D. Mass. March 29, 2013).

---

[6] The court has also compared the exhibit with the submitted time by the Plaintiffs' attorneys.

Therefore, the court finds that 1.5 hours of McGowan's time will be deducted from her claimed 1,078.60 hours.

d. Excessive time–ASU submits Exhibit 8 and states that the entries in it represent excessive billing and should be reduced by 1/3.   While ASU states that the entries on the 15 page exhibit are excessive, ASU does not explain why.  (Doc. #189 at p.18).

The court has reviewed the exhibit, and the Plaintiffs' responses thereto.  This was an involved case with three Plaintiffs bringing multiple claims, and involving multiple officials at Alabama State University.  In her affidavit, McGowan states that Plaintiffs' counsel attempted to limit fees by using paralegal assistance in preparing discovery responses, disclosures, back pay calculations, exhibits, and witness and exhibit lists, and using associates Kiser and McGinley for assistance in research and drafting.  (Doc. #175-1 at p.11).   Arrington states that as a solo practitioner, she could not delegate work to an associate or paralegal, but she did not include total time for work such as reading discovery documents.  (Doc. #175-4 at p.4).  In the absence of any specific reason offered by ASU to the contrary, the court finds that the time entries identified are not excessive.

e. Vague and cryptic entries–in Exhibit 9, ASU identifies 108 hours of entries for Arrington and .8 hours for paralegals which it states are cryptic, and too vague to meet the Plaintiffs' burden in seeking compensation.

The Plaintiffs' explanation with regard to the challenged paralegal time is that the identified paralegal time has been taken out of context because it must be read along with the preceding entry.   Arrington offers a similar explanation for some of her time entries.  For example, the entry, "call to client (JW)–re: same" refers to the previous entry "Several E-mails

Concerning Depositions from Client re: whom, why and timing." (Doc. #177-1). The court accepts this explanation and finds those entries are not so vague so as to meet the Plaintiffs' burden.

Another entry by Arrington is "PR Discussions." (Doc. #189-9). In supplemental materials, the explanation offered for the entry of 1.5 hours for "PR" is "Media & Press Discussions With Clients and Counsel." (Doc. #196-1 at p.25). Because the explanation reveals that the time was not expended for litigation purposes, the court will deduct that 1.5 hours from Arrington's claimed 1,373.20 hours. *See E.E.O.C. v. AutoZone, Inc.*, No, 10-11648, 2013 WL 1277873, at \*5 (D. Mass March 29, 2013) (deducting time spent counseling individuals on how to handle media inquiries).

### 3.   Adjustment to the Lodestar Figure for Time Expended at Trial

ASU argues that the lodestar figure must be reduced to reflect the Plaintiffs' degree of success. ASU contends that the Plaintiffs pled 41 claims but succeeded on only 13 of those claims. ASU does not separate out the lodestar figure for each Plaintiff, but argues that the court should reduce the entire lodestar figure by 50%.

The Plaintiffs dispute the characterization of their claims, stating that a verdict was returned in favor of the Plaintiffs on 7 of 9 claims which were submitted to the jury. The Plaintiffs explain that each of them had claims for racial harassment, sexual harassment, retaliation, and disparate treatment, both gender and race. At the close of the evidence, the Plaintiffs conceded their disparate treatment claims, and those claims did not go to the jury. The Plaintiffs argue that Burkhalter was successful on all of her claims, racial and sexual hostile environment, and retaliation, and that Weatherly and Williams were successful on two of three

claims, racial hostile environment and some retaliatory actions.

The Plaintiffs state that they have not submitted time and/or did not expend any time on interviewing or deposing employees as to the disparate treatment claims which were ultimately dismissed at trial.   They argue that any time submitted spent on those claims overlapped with proof on the successful claims.  McGowan states in an affidavit that time spent exclusively on claims dismissed by summary judgment or other Orders, including time spent on attempting to obtain a temporary restraining order for Weatherly, has not been submitted.  (Doc. #175-1 at p.7).  Arrington (Doc. #175-4 at p.4) and Fitzpatrick (Doc. #176 at p.3) make similar statements in their affidavits.  The Plaintiffs do not, however, specifically address the sexual harassment claims of Plaintiffs Weatherly and Williams, and the retaliation theories of Weatherly, Williams, and Burkhalter which were not successful at trial.

In *Hensley* the Supreme Court stated:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendant [ ] ..., counsel's work on one claim will be unrelated to his work on another claim. Accordingly ..., these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim

*Hensley*, 461 U.S. at 434–35.  If a plaintiff's claims for relief, however, "involve a common core of facts or will be based on related legal theories," then "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* at 435.   A court "can reduce attorneys' fees from the lodestar amount even though the unsuccessful and the successful claims are related if the plaintiff obtained only limited success."  *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir.

1987).

While the Plaintiffs' attorneys have stated generally that they did not claim time for claims for which they were not successful, they only specifically address claims such as those for which summary judgment was granted, and do not purport to have deducted hours from their claimed time for time expended on Williams and Weatherly's sexual harassment claim or unsuccessful retaliation claims presented to the jury.  Conduct experienced by Weatherly, and to a lesser extent Williams, which was committed by ASU official Lavonette Bartley was related to claims upon which Plaintiff Burkhalter prevailed.  The claims by the Plaintiffs, therefore, were related and involved a common core of facts.  The retaliation claims were discrete actions taken after protected activity in complaining about harassment, so also involved a common core of facts.   It was appropriate, therefore, not to deduct time for those claims.  Because the Plaintiffs did not prevail, however, upon sexual harassment claims brought by Williams and Weatherly, and did not prevail on all of their retaliation theories, an adjustment is necessary in this case.

In considering the Plaintiffs' relative success, the court notes that at trial the Plaintiffs did not seek a specified amount in emotional distress damages, leaving that to the jury's discretion. They did ask for back pay in the amount of $141,573.76 for Williams, $94,592.51 for Burkhalter, and lost leave time in the amount of $20,240.13 for Weatherly.  (Doc. #233 at p.69). The jury awarded Williams and Burkhalter what they sought, and awarded Weatherly substantially less than what she sought.  The bulk of all of their damages, however, were for emotional distress and mental anguish, and there is no clear way to balance the relief they sought against what they obtained in terms of monetary value.

The Eleventh Circuit has affirmed an attorneys' fee award in which the district court

adjusted the lodestar figure where multiple plaintiffs achieved substantial success, but did not prevail on all of their civil rights claims at trial. *Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012), *aff'g, Fielder v. Shinseki*, No. 8:07cv1524-T-TBM, 2010 WL 1708621 (M.D. Fla. April 26, 2010). The district court in that case reasoned that because the plaintiffs were successful overall, and received substantial monetary awards, but were not fully successful on all claims, an adjustment was necessary where portions of counsel's work was necessarily devoted to unsuccessful claims, and where there was some duplication of effort and redundancy. *Fielder*, 2010 WL 1708621 at *3 n.10, *4. The court adjusted the lodestar figure, using percentages ranging from 10% to 20%, to account for acts of claimed discrimination and retaliation which the jury rejected. *Id.*

Similarly, this court concludes that some, but not a substantial, reduction in the lodestar is appropriate in this case, to reflect the limitation on the Plaintiffs' success in light of the hours spent by counsel in preparation for, and the time spent during, trial, on sexual harassment and retaliation claims upon which the Plaintiffs did not prevail. Deposition questions, summary judgment briefing, and trial testimony which focused on LaVonette Bartley's acts of a sexual nature or sexual comments were discrete areas of time relevant to claims on which Plaintiffs Williams and Weatherly were not successful. In addition, while ASU did not adequately identify redundant hours for the court's consideration to deduct hours in calculating the lodestar, upon review of the time records, the court determines that the presence of three attorneys and paralegal support at trial resulted in some duplication of efforts, and also should be accounted for in the adjustment. *See Fielder*, 2010 WL 1708621, at *3 n.10 (accounting for duplication and redundancy in the adjustment of the lodestar). The court will, therefore, after reviewing the

records and having observed the lengthy trial, adjust the lodestar figure for attorneys' fees for time expended prior to and during trial by 10%, which the court finds to be reasonable under all the circumstances.

### 4.  Hours Reasonably Expended Post-trial

Burkhalter seeks compensation for additional hours expended post-trial by attorneys McGowan, Heldman, Fitzpatrick, and Arrington.  Burkhalter seeks 147.70 attorney hours for McGowan and her firm, 39.90 paralegal hours, 201.90 hours for Heldman, 100.9 hours for Fitzpatrick, and 144.80 hours for Arrington.  (Doc. #250 at p.2, Doc. #258 at p.2).

Plaintiffs Weatherly and Williams seek recovery for 270.80 hours for Montiel, 6.4 hours for Wasden, 182.1 hours for Parsons, 8.4 hours for Egan, 29.50 hours for Miller, and 64.5 hours for paralegal support.  (Doc. #271 p.6).

ASU argues that some claimed hours are excessive, duplicative, redundant, clerical or administrative, and also that the explanations for some entries are vague and cryptic. ASU does not, however, contend that hours expended by Wasden should be reduced.

The court has reviewed the selections from the time records pointed to by ASU and does not agree that the hours claimed by Burkhalter or Weatherly and Williams for post-trial time are excessive, duplicative, redundant, or vague, for reasons similar to those previously discussed. For example, entries identified (Doc. #259-6) as being vague, such as "Research, continue to work on brief," are clarified when read in the context of other entries regarding Heldman's work on the appellate brief.   Also, as with the objection to duplicative entries for pre-trial work, ASU does not point to duplicative entries by another time keeper expended post-trial, but simply directs the court to a listing of time claimed by a single time keeper.  Even without specific

designation, however, Montiel has addressed in a supplemental affidavit the time records and given explanations for those entries (Doc. #276 at Ex. 1).

Unlike some of the entries for time claimed up to and including trial for attorney McGowan, none of the entries claimed by Burkhalter for post-trial work appear to be primarily clerical in nature.  Attorneys for Williams and Weatherly also respond in brief, and in a supplemental affidavit (Doc. #276 Ex. 1), that post-trial time identified by ASU as clerical was not in fact clerical, such as time spent reviewing legal memoranda or monitoring deadlines.

As to the issue of excessive time spent on post-trial work, although significant time was expended on appellate briefs, there was an extensive record in this case, and upon review of the appellate briefs, the court concludes that the brief writers expertly culled the record to salient points, which ultimately formed, at least in part, the basis for affirmance and dismissal for lack of jurisdiction, on appeal.

Plaintiff Burkhalter further has explained in brief that while attorneys Arrington and Fitzpatrick did not participate in researching and drafting appellate briefs, they were involved in defending post-judgment motions, Eleventh Circuit mediation, and post-judgment settlement negotiations.

Montiel explains in his affidavit that extensive efforts were made to resolve the appeal through settlement, which was not successful.   In their brief, attorneys for Williams and Weatherly also state that when the Eleventh Circuit set the case for oral argument, it did not indicate the issues to be argued, so the Plaintiffs had to be prepared to address all of the issues raised, which included a challenge to the sufficiency of the evidence.  In her affidavit, Parsons explains that she and Wasden did not travel to the oral argument so as to keep fees low, and that

her role in preparing the appellate brief included review of the trial court record, case law, and exhibits relevant to issue on appeal.  (Doc. #274 at p. 14).

In short, the court does not find any reduction in the claimed time to be appropriate.  The full amount of hours claimed for post-trial work is reasonable in this case, and will be multiplied by the hourly rate set above.

## B. Costs and Expenses

### 1.  At Trial

"[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."  *See Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983).  To determine which expenses may properly be included, the court must look to "the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." *Id.*  The "standard of reasonableness is to be given a liberal interpretation."  *Id.*

The Plaintiffs have submitted a Bill of Costs of $350 in fees of the Clerk; $13,910.90 for printed or electronically recorded transcripts; $4,771.86 in fees and disbursements for printing; and $767.50 in fees for witnesses.  (Doc. #174).  The Plaintiffs filed a Corrected Petition for Attorneys' Fees, Expenses, and Costs on Behalf of the Plaintiffs in which they seek $28, 651.13 in expenses and costs. (Doc. #181).   ASU subsequently objected to the second and third figures set forth in Doc. #174, (Doc. #187), and then incorporated by reference its arguments as to the amended Petition. (Doc. #189 at p. 1 n.1).

ASU contends that the fees for printed or electronically recorded transcripts of

depositions are not recoverable because the costs of rough drafts, or ASCIIs, are incurred for mere convenience, citing *U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 621 (11th Cir.2000).  In that case, the Eleventh Circuit explained that "taxation of deposition costs is authorized," but also explained that "[w]here the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." *Id.* (internal citations omitted).

The Plaintiffs have responded with a lengthy explanation as to why the costs of the depositions were necessary.   The Plaintiffs explain that three different ASU officials were listed as Rule 30(b)(6) representatives, including Carmen Douglas.  Carmen Douglas's deposition was taken in two parts.  The Plaintiffs state that the witness was vague and could not recall what had been testified to the previous day, and would ask the court reporter to read it back.  The Plaintiffs state that with this witness, and other ASU officials, it became necessary to have rough drafts of depositions to conduct the second part of depositions, or "bring about recollection" for different explanations of the same events when multiple ASU deponents were together during depositions. (Doc. #195 at p.3).  The court finds that the explanation offered is sufficient to justify the expenses of the rough drafts.

ASU also objects to the costs for printing, stating that the Bill of Costs does not describe what the printing costs are.  The Plaintiffs respond that they have provided extensive documentation as to costs of photocopying expenses.  (Doc. #174 at p. 4-12).  The court agrees with the Plaintiffs.  Therefore, the court finds that the objections to the costs are due to be OVERRULED, and the Amended Petition for Expenses and Costs is due to be GRANTED.

### 2.  Post-Trial Costs and Expenses

Burkhalter seeks $2,875.74 in post-trial expenses for McGowan and $2,443.53 in post-trial expenses for Heldman.  (Doc. #250).  In her supplemental Petition, and in the evidentiary support, Burkhalter only provides additional time spent in the case, and no additional expenses by Fitzpatrick and Arrington.   (Doc. #258).  Williams and Weatherly do not claim expenses in their submission to the court.  (Doc. #271).

ASU contends that McGowan and Heldman have claimed postage and meals which are not recoverable, relying on cases applying 28 U.S.C. § 1920 to claimed costs.  However, such expenses may be allowable under 42 U.S.C. § 1988.  *See Dowdell*, 698 F.2d at 1191-92 (noting that "[t]ravel, telephone, and postage expenses are not unusual.  All of them have been awarded in the decisions of courts of this circuit."); *see also Oden v. Vilsack*, No. 10-00212-KD-M, 2013 WL 4046456, at *19, *20 (S.D. Ala. Aug. 9, 2013) (awarding expenses for lodging and meals); *Barnes v. Zaccari*, No. 7:12cv89, 2013 WL 3864306 at *29 (M.D. Ga. July 24, 2013).

ASU also contends that Burkhalter has not demonstrated that copying, scanning, and printing costs were necessary, so that McGowan's and Heldman's itemized expenses for copying, scanning, and printing should be deducted from the expenses.  (Doc. #261-1 at p.7).  These expenses are not considered to be general overhead, however, but can be awarded as expenses if they reasonable, as the court finds them to be here.  *See, e.g., Robinson v. Ala. State Dept. of Educ.*, 727 F. Supp. 1422, 1433 (M.D. Ala. 1989).   Finding the claimed expenses to be reasonable, the court will award the expenses claimed for post-trial representation.

## IV.  CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion for Leave to Attach Omitted Exhibits A &B (Doc. #196) is GRANTED.

2.   The Motion Seeking Leave to Attach Omitted Exhibit C (Doc. #198) is GRANTED.

3.   The Consent Motion for Leave to File (Doc. #260), the Motion to Substitute (Doc. #261) is GRANTED.

4.   The Motions for Attorneys' Fees (Doc. #175, 181, 250, 258) are GRANTED to the extent that compensation for attorneys' fees and expenses is due as follows:

**Pre-Trial and Trial Fees and Expenses**

| Attorneys/staff | Reasonable Hours | x Reasonable Hourly Rate | - 10% Lodestar adjustment | = Total Fees |
|---|---|---|---|---|
| Candis McGowan | 1,077.10 | $300 per hour | | 290,817.00 |
| Monica Arrington | 1,371.70 | $225 per hour | | 277,769.25 |
| Joseph L. Fitzpatrick, Jr. | 915.80 | $225 per hour | | 185,449.50 |
| Jacob Kiser | 33.50 | $175 per hour | | 5,276.25 |
| Rachel McGinley | 42.00 | $175 per hour | | 6,615.00 |
| Paralegal support | 365.00 | $ 80 per hour | | 26,280.00 |
| | | | | |
| Total Fees | | | | 792,207.00 |
| Total Expenses | | | | 28,651.13 |

**Post-Trial Fees and Expenses**

| Attorneys/staff | Reasonable Hours Post-trial | x Reasonable Hourly Rate | =Total Fees |
|---|---|---|---|
| Candis McGowan | 147.70 | $300 per hour | 44,310.00 |
| Sam Heldman | 201.90 | $300 per hour | 60,570.00 |
| Mark G. Montiel | 270.80 | $300 per hour | 81,240.00 |
| H. William Wasden | 6.40 | $300 per hour | 1,920.00 |
| Monica Arrington | 144.80 | $225 per hour | 32,580.00 |
| Joseph L. Fitzpatrick, Jr. | 100.90 | $225 per hour | 22,702.50 |
| Kristin Taylor Parsons | 182.10 | $225 per hour | 40,972.50 |
| Gillian Egan | 8.40 | $150 per hour | 1,260.00 |
| Rachel Miller | 29.50 | $100 per hour | 2,950.00 |
| Paralegal support (Wiggins firm) | 39.90 | $ 80 per hour | 3,192.00 |
| Paralegal support (Patti Grove) | 64.50 | $ 80 per hour | 5,160.00 |
| | | | |
| Total Fees | | | 296,857.00 |

Total Expenses                                                                      5,319.27

**Total Pre-Trial, Trial and Post-Trial Attorneys' fees** $ 1,089,064.00
**Total Pre-Trial, Trial and Post-Trial Expenses**        $     33,970.40

**Total**                                                 $ 1,123,034.40

Accordingly, it is hereby ORDERED that the Plaintiffs shall recover of ASU the sum of $1,089,064.00  in attorneys and paralegals' fees and $33,970.40 in costs and expenses, for a total of $1,123,034.40.

2.  Due to the court's granting of the Motions for Attorneys' fees and entering judgment against ASU for amounts of fees and costs which satisfies the attorneys' lien of McGowan, Arrington, and Fitzpatrick against the recovery of Weatherly and Williams, the Motions to Modify the Attorneys' Charging Liens (Doc. #262, #263) are DENIED as moot.  The Motion to File Exhibits to Oppositions to Motions to Modify Attorney's Charging Liens and Incorporated Supporting Memorandum Under Seal (Doc. #265) is GRANTED and the Clerk is DIRECTED to seal those documents.  The liens are ORDERED discharged.

3.  Any other pending motions are DENIED as moot.

Done this 21st  day of November, 2013.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

31